240 So.2d 390 (1970)
Goldman J. MENARD, Plaintiff and Appellee,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants and Appellants.
No. 3217.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1970.
*391 Holt & Woodley, by E. E. Woodley, Lake Charles, for defendants-appellants.
Francis E. Mire, Lake Charles, for plaintiff-appellee.
Before FRUGEé, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident. The plaintiff, Goldman J. Menard, was driving an automobile which was struck in the rear by a truck driven by the defendant, Osier W. Sutherland, and insured by Travelers Insurance Company. The district judge *392 awarded plaintiff general damages of $4,000 and special damages of $887.98. Defendants appealed. Plaintiff answered the appeal, seeking increases in the awards for special damages.
The issues are: (1) Was the plaintiff guilty of contributory negligence? (2) Is the award of $4,000 for general damages excessive? (3) Did the district judge err in his awards for loss of wages, property damage and future medical expense? (4) Did the district judge err in taxing as costs the court reporter's fee for the discovery deposition of the defendant, Osier W. Sutherland?

CONTRIBUTORY NEGLIGENCE
The accident occurred in the City of Lake Charles on U. S. Highway 171, which runs north and south, at a point about 100 feet south of the Pineview Street intersection. There is a traffic light at this corner. Theriot's parking lot is located along the west side of Highway 171 south of the intersection.
Plaintiff was working as a boiler maker for Brown and Root Construction Company on a job at DeRidder, Louisiana. Each morning he and other employees drove in a car pool from Lake Charles to the job site. On October 9, 1969, at about 6:00 a. m., plaintiff was driving his 1961 Ford Falcon in a northerly direction on Highway 171. It was dark and had been raining. He stopped his automobile on Highway 171, about 100 feet south of the traffic light at the Pineview Street intersection, and waited for south bound traffic to clear. His purpose was to turn left and enter Theriot's parking lot, where he was to pick up other employees to transport them to DeRidder. Plaintiff testified that his left-turn blinker lights were operating. While his vehicle was stopped in this position, it was struck from the rear by a 1968 Dodge pickup truck driven by the defendant Sutherland.
Sutherland's version of the accident is that he was driving in a northerly direction at a speed of 30 to 35 miles per hour on U. S. Highway 171. He saw plaintiff's vehicle about a block ahead. He says the traffic light was green and he saw no blinker light or brake light operating on plaintiff's vehicle. Sutherland thought that plaintiff was moving. When he reached a point about 25 feet from the Falcon, he suddenly realized that it was stopped on the highway. Defendant says he immediately applied his brakes and cut to the right but was unable to avoid striking the automobile.
The district judge correctly concluded the accident was caused solely by the negligence of Sutherland in failing to observe, in time to avoid the accident, that plaintiff's vehicle was stopped. Defendant's argument that plaintiff was contributorily negligent is based on the contention that plaintiff failed to give any left turn signal. The district judge made no express finding as to whether the blinker light was in operation. However, plaintiff's testimony that it was is corroborated by Dallas Benoit, one of plaintiff's co-workers in the car pool, who arrived immediately after the collision. Benoit testified that plaintiff's left turn blinker light was still operating when he reached the scene. We find a preponderance of the evidence shows the blinker light was operating, and plaintiff was free of negligence.

THE GENERAL DAMAGE AWARD
The next issue is whether the award of $4,000 in general damages is excessive. The evidence shows that on the day of the accident plaintiff went to Dr. Wilson D. Morris, a general practitioner in Lake Charles, with complaints of pain in the back of his neck and between his shoulder blades. Dr. Morris found no objective symptoms of injury. In particular, he found no muscle spasm, the x-rays were negative, and there was no abnormality in the lordotic curve. These are the usual objective signs of a whiplash injury. However, based on plaintiff's subjective complaints, Dr. Morris diagnosed a cervical *393 sprain. He prescribed drugs for pain and muscle relaxation and also a cervical collar.
Plaintiff testified he purchased the cervical collar and actually wore it for two or three weeks. He did not report for work on the day of the accident, Thursday, October 9, nor on the following Friday, Saturday, Sunday or Monday, but he did return to work on Tuesday, October 14. He says that for about three weeks after the accident he performed only light work and then returned to his regular duties as a boiler maker, which is hard physical labor.
Dr. Morris' records show that plaintiff reported to his office for "Tru-Trac therapy", a type of traction treatment administered in the office, about once a week during October and November and then once every two weeks during December and January of 1970. Dr. Morris' records also show that on March 7, 1970, he discharged plaintiff as being able to return to work without further treatment. Plaintiff returned to Dr. Morris on March 18, 1970, but the doctor was unable to find any justification for plaintiff's complaints. Actually Dr. Morris found no objective symptoms at any time.
At the request of counsel for the defense, plaintiff was seen on February 3, 1970 by Dr. Jerome W. Ambrister, an orthopedic surgeon of Lake Charles. This physician found the x-rays negative, no muscle spasm, no flattening of the lordotic curve and no other objective symptoms. Based on the history and plaintiff's subjective complaints, Dr. Ambrister diagnosed minimal residuals of a straining injury which he said would completely subside. These minimal residuals consisted of a little stiffness in the neck on first arising in the morning and an occasional headache, both of which were relieved with aspirin.
Under the decision of our Supreme Court in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964) we are permitted to consider the amounts of awards in "similar" cases to determine whether there has been an abuse of discretion by the trial judge in an award of damages for personal injuries.
In Triche v. Roberts, 234 So.2d 438 (1st Cir. 1970), the appellate court awarded $2,000 to a plaintiff who sustained an acute cervical and lumbosacral sprain, with contusions of the left hip and right leg, for which he was treated for about nine months.
In Luneau v. Edwards, 236 So.2d 80, 81, (La.App. 3rd Cir. 1970) we affirmed an award of $2,500 for soft tissue injuries of the neck and back, accompanied by multiple contusions and lacerations, where the plaintiff had painful residual disabilities for a period of about six months.
In Brodhead v. Aetna Casualty & Surety Company, 233 So.2d 619 (La.App. 3rd Cir. 1970) we affirmed an award of $4,500 for injuries consisting of a strain of the neck, cut on the left hand, contusions of the head, shoulder and left knee and injuries to three front teeth. Plaintiff wore a neck collar for a substantial part of each day for eight and one-half months and suffered constant pain for three or four months during which she spent most of her time in bed taking codeine. She was still experiencing pain at the time of the trial about two years after the accident.
It is apparent that the award of $4,000 in the present case is excessive. Giving the plaintiff every benefit of the doubt, he has suffered a whiplash injury, which was so minimal that it produced no objective symptoms. He continued to do light work for three weeks after the accident and then returned to the hard manual labor of a boiler maker, which he has performed ever since. His own physician discharged him in about five months. The award must be reduced to the sum of $2,000.

*394 THE AWARDS FOR SPECIAL DAMAGES
Defendants complain of several of the awards for special damages. They say first that plaintiff lost only five days from work but the trial judge allowed compensation for six. We find the record shows plaintiff lost six days, October 10, 13, 21, 22 and 27 of 1969, and January 2, 1970.
Defendants next argue that most of the work days missed by plaintiff were to take physiotherapy treatments at the doctor's office. They say this should have been done on Saturdays, which were not working days. Plaintiff testified he took these treatments to relieve the stiffness and discomfort in his neck. We will not disturb the trial court's finding that the injury necessitated these treatments on these particular days.
Appellants also argue the court erred in awarding plaintiff earnings on an overtime basis for the last five hours of each of the six days missed. The contention here is that loss of wages should be based on plaintiff's average weekly earnings per hour. The facts are that plaintiff worked nine hours a day, five days a week, for a total of 45 hours per week. He was paid time and a half for all hours worked over 40 hours per week. All of the six days which he missed fell in different weeks except October 21 and 22 of 1969. Thus he lost all of his overtime for five weeks. This is the general basis on which the trial judge computed loss of wages. However, he should not have allowed overtime on both October 21st and 22nd. This means the award must be reduced $14.35.
Defendants next urge an error in the award for the total loss of plaintiff's automobile. Mr. Phil Menard, brother of the plaintiff and a used car salesman, appraised plaintiff's 1961 Falcon automobile at $495. Defendant's appraiser, Mr. Morris Ledet, of LeBlanc's Appraisal Service, testified that the National Automobile Dealers Association book showed a value of only $230, but that the Falcon was in good shape and hence he allowed a value of $270. The salvage value is $35. We will not disturb the trial court's finding that the automobile had a value of $350 and the salvage value was $35, which resulted in an award of $315 for loss of plaintiff's automobile.
The appellants also complain of an award of $50 for the rental of another automobile until plaintiff purchased another one. Plaintiff testified that he rented a car from his brother, Phil Menard, at an agreed price of $50, until he could purchase a replacement. We think this is a reasonable rental and will not disturb this award. See Barry v. United States Fidelity & Guaranty Company, 236 So.2d 229 (La.App. 3rd Cir. 1970).
Finally, the appellants complain of the court's award of $100 for future medical expense. When suit was filed, plaintiff claimed $75 for past medical expenses and $100 for future medical expenses. The trial court awarded both amounts. After suit was filed, but prior to trial, plaintiff incurred an additional $15 medical bill. There is no suggestion that he will have additional medical expenses related to this accident. Accordingly, we reduce the award for future medical expenses to the sum of $15.

TAXING AS COURT COSTS THE EXPENSE FOR TAKING DEFENDANT'S DISCOVERY DEPOSITION
Defendants contend the trial judge erred in assessing as costs of court the court reporter's charge of $17 for taking the discovery deposition of the defendant Sutherland. The record shows that at the trial the plaintiff called Sutherland under cross-examination and, at the completion of his testimony, offered to introduce his discovery deposition in evidence. Defendant questioned the introduction of the deposition on the grounds that plaintiff did not state the purpose for filing the document. *395 The trial judge allowed the deposition to be filed in evidence and assessed as costs the charge for taking it.
Under the provisions of LSA-C.C.P. Article 1428, paragraph (2) "The deposition of a party, or of his representative as defined in Article 1634, may be used by an adverse party for any purpose." Our jurisprudence construes this article to mean that the deposition of a party to the suit may be filed in evidence by any adverse party for any purpose, regardless of whether the deponent is present and testifies or whether an express purpose for the introduction of the deposition is given. See Hebert v. Heroman, 111 So.2d 532 (La.App. 1st Cir. 1959); Hall v. Liberty Mutual Insurance Company, 153 So.2d 553 (La.App. 1st Cir. 1963); Official Revision Comments and Historical Note under LSA-C.C.P. Article 1428; Baron & Holtzoff, Federal Practice & Procedure, Section 654 at page 162, and particularly the cases cited under Footnotes 39 and 40. Defendant does not object that the deposition was inadmissible under the rules of evidence (this is one of the requirements of Article 1428), his sole complaint being that plaintiff gave no reason for the introduction of the document. We find this objection without merit.

PLAINTIFF'S ANSWER TO THE APPEAL
In his answer to the appeal, plaintiff first contends the expert witness fee of Dr. Wilson D. Morris should be increased to $150. The court allowed $50 for this general practitioner. This is a matter which rests largely within the discretion of the trial judge. We find no abuse of discretion in this regard.
Plaintiff also contends he should be allowed the sum of $465 for the loss of his automobile. This apparently is based on the appraisal of $495, made by his brother, with a credit of $30 for salvage. For the reasons stated above, we find no error in the district court's award of $315 for this item.
Finally, plaintiff contends he should have been awarded his gross wages lost. The trial court deducted 20% for social security, income tax withholding and the expense of driving to work. No authority has been cited to support this reduction and we find none. Louisiana's awards for lost wages have been computed on gross wages. See Adams v. Allstate Insurance Co., 212 So.2d 204, 210 (La.App. 4th Cir. 1968). Plaintiff's gross lost wages amounted to $331.15.
For these reasons, the judgment appealed is amended by reducing the award for general damages to the sum of $2,000, by reducing the award for future medical expenses to the sum of $15, and by increasing the award for lost wages to the sum of $331.15. The remaining special awards totaled $511.48. Thus the total award is reduced to the sum of $2,857.63. Otherwise than as herein amended, the judgment is affirmed. The costs of this appeal are assessed against the plaintiff and defendants in the proportion of one-half to each.
Affirmed, as amended.