552 So.2d 1223 (1989)
Edna I. CUPSTID, et al., Plaintiffs-Appellants,
v.
HARRISON HARDWOOD MFG. CO., et al., Defendants-Appellees.
No. 88-755.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Rehearing Denied December 21, 1989.
*1224 Leger & Mestayer, Franklin G. Shaw, Hammett, Leake & Hammett, George Healy, New Orleans, for plaintiffs/appellants.
Gist, Methvin, Howard Gist III, Alexandria, for defendants/appellees.
Before STOKER, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Plaintiffs, Edna Inez Cupstid, Wilburn Donnie Cupstid, Jr., Ronnie Reed Cupstid and Curtis Shane Cupstid (the widow and surviving children of Wilburn Donnie Cupstid), filed suit against defendants, Harrison Hardwood Manufacturing Company, Inc. (Harrison Hardwood), Worldwide Underwriters Insurance Company and Employers Insurance of Wausau, a Mutual Company, for the wrongful death of Wilburn Donnie Cupstid, occurring at the sawmill owned by Harrison Hardwood. A jury found the decedent, Mr. Cupstid, to be 40% at fault and Harrison Hardwood to be 60% at fault. Each plaintiff was awarded substantial damages for loss of support, funeral and related expenses, mental anguish and loss of future love and affection, and survival damages suffered by the decedent.
Subsequently the defendants filed various motions for post-trial relief. These motions included a motion for judgment notwithstanding the verdict (J.N.O.V.), and, in the alternative, a motion for a new trial *1225 on the grounds that the judgment is contrary to the law and evidence on the issue of liability and damages, or a remittitur. The defendants' motions also included a motion for a new trial on the grounds of jury misconduct, as an alternative to the motion for J.N.O.V. The post-trial motions were heard by the trial judge on January 28, 1988. On April 28, 1988, a revised judgment was signed by the trial judge. For reasons set forth in his reasons for judgment, the trial judge granted the defendants' motion for J.N.O.V., reapportioning the liability of the parties as follows: 75% fault to the decedent and 25% fault to the defendants. The trial judge also granted the remittiturs asked for by the defendants. In granting the remittiturs, the trial judge negated the survival damage award, reduced the loss of support award to each plaintiff by one-third and, further, reduced the mental anguish and loss of future love and affection award to the children by one-half. Finally, the trial judge granted a new trial based on the alleged jury misconduct in the alternative to its granting of the J.N.O.V. Both sides appeal the revised judgment of the trial judge. We affirm.

FACTS
The central facts of this case are not in dispute. Wilburn Donnie Cupstid was a self-employed truck driver, who had been hauling short hardwood logs for his friend, Roy Beach, for a period of two months prior to his death on May 10, 1985. Roy Beach was an independent timber producer operating out of Adams County, Mississippi. Mr. Cupstid owned his own truck and equipment and would haul two to three loads a day to various lumber yards in Natchez, Mississippi and Concordia Parish, Louisiana. Prior to becoming a truck driver, Mr. Cupstid was employed in the oil service industry.
On the morning of May 10, 1985, Mr. Cupstid was instructed to haul a load of logs from the Adams County location to Harrison Hardwood's sawmill in Ferriday, Louisiana. The truck was loaded by an employee of Roy Beach. The logs were pyramided above the stakes of the log truck and the load was secured with binders. Roy Beach testified in his deposition, which was read into the record, that before Mr. Cupstid left for the mill, he informed him that one of the logs appeared to be "kind of rickety on the truck" and that he offered to relocate the log, but that Mr. Cupstid refused his offer and went on his way.
Mr. Cupstid arrived at the Harrison Hardwood sawmill at approximately 10:30 a.m. He proceeded to pull his truck up behind another truck which was being unloaded by a forklift at the time. After parking behind the truck, Mr. Cupstid exited his truck and removed the binders from his load. When the binders were released, a log fell from the truck and struck Mr. Cupstid, killing him.

J.N.O.V.
The plaintiffs in this case argue that the trial judge erred in granting the defendants' motion for J.N.O.V., increasing the decedent's liability from 40% to 75%. The defendants, on the other hand, contend that the trial judge committed error in not granting the J.N.O.V. in its entirety (i.e. in not reducing the defendants' percentage of fault to zero).
The standard for granting a motion for J.N.O.V. has been well-established by the jurisprudence. A motion for J.N.O.V. may only be granted if the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict on the facts at issue. Webb v. Goodley, 512 So.2d 527 (La.App.3d Cir.1987); Alumbaugh v. Montgomery Ward & Co., 492 So.2d 545 (La.App.3d Cir.), writ denied, 495 So.2d 304 (La.1986). The trial court in deciding on the motion may not weigh the evidence, pass on the credibility of the witnesses or substitute its reasonable inferences of the facts for those of the jury. Webb, supra. However, questions of existence of a duty, violation of that duty by the defendant, and assumption of the risk or contributory negligence by the plaintiff are legal questions and are certainly within the *1226 province of the trial judge. Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App.3d Cir.1987); Rougeau v. Commercial Union Insurance Co., 432 So.2d 1162 (La.App.3d Cir.), writ denied, 437 So.2d 1149 (La. 1983). As a reviewing Court, we must determine whether the trial judge's conclusions as to the liability of the respective parties were manifestly erroneous. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La. 1985).
In determining whether liability exists under the facts of a given case, Louisiana courts have employed a "duty risk" analysis. Dixie Drive It Yourself System, Inc., v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). In making the requisite analysis four questions are to be considered:
1) Was the conduct in question a cause-in-fact of the resulting harm?
2) What, if any, duties were owed by the respective parties?
3) Were the requisite duties breached?
4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120 (La.1987); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970).
The plaintiffs argue that the defendants were liable for Mr. Cupstid's death under two theories of liability:
1) Harrison Hardwood's failure to warn the decedent of the danger of releasing the binders on his log truck before the defendant's forklift secured the load, and
2) Harrison Hardwood's failure to enforce its policy of not having the drivers release the binders on their trucks until a forklift had been placed against the load for safety purposes.
They maintain that if Harrison Hardwood's forklift would have been used to secure the load on the decedent's truck before he removed the binders, his death would not have occurred. The plaintiffs point out that there were no signs on the Harrison Hardwood yard to warn the drivers not to release their binders before a forklift could secure the load. They further point out that it was the policy of Harrison Hardwood not to allow removal of the binders until a forklift secured the load and that this policy is also embodied in an Occupational Safety and Health Administrative regulation. The plaintiffs note that a Harrison Hardwood employee testified at trial that the employees no longer informed truckers of this policy because it had been their experience in the past that the truckers would not heed the warning anyway. Finally, the plaintiffs emphasize that the decedent was new to the trucking business and was not fully aware of the risks involved.
The defendants contend that the decedent was solely responsible for the accident. They point out that not only was he informed that he was carrying an unbalanced load, he also knew that the load was hazardously piled beyond the height of the stanchions of the truck. The defendants also place great emphasis on the fact that almost immediately after the decedent parked his truck at the yard, he began to release the binders. The defendants further point out that there were no employees of Harrison Hardwood around Mr. Cupstid when he released the binders and that no employee was responsible for or contributed to his premature decision to release the binders on his load. Additionally, the defendants maintain that the decedent had enough experience in the logging industry to realize the risks of his behavior.
The trial judge, utilizing a duty-risk analysis, found that Harrison Hardwood owed a duty to the plaintiff to enforce its policy of not allowing truck drivers to prematurely release their binders and that the breach of this duty was a cause in fact of the resulting harm. The trial judge also found that the decedent's actions amounted to contributory negligence. We agree with the finding of negligence on the part of both parties.
Having found both parties negligent, we now turn to the matter of apportionment of fault. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, *1227 973-4 (La.1985), the Louisiana Supreme Court set forth guidelines in apportioning comparative fault. It stated:
"We recognize that a standard for determining percentages of fault has not been provided by the Legislature, and we are therefore presented with an opportunity to offer guidelines as we apportion fault in this instance. In so doing we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979), which incorporates direction for the trier of fact. Section 2(b) provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties." (footnotes omitted)
In Turner v. New Orleans Public Service, Inc., 476 So.2d 800, 805 (La.1985) (Justice Lemmon, concurring), Justice Lemmon noted that proportionate percentages of fault should be based on considerations of the parties' respective degrees of causation and duty.
In light of the foregoing factors we cannot say that the trial judge committed manifest error in assigning 75% liability to the decedent and 25% to the defendant. We find that the direct and immediate cause of the decedent's death was his premature releasing of the binders on his load. This action was taken in great haste, where there was no need to proceed hastily. The decedent had enough experience in the log trucking industry to be aware of the fact that he was carrying a precariously balanced load and that this load would require great caution.
With regard to the liability of the defendants, we agree with the trial judge that Harrison Hardwood was required to take some measures to enforce its policy concerning releasing of the binders on the loads, when it knew that the truck drivers were routinely disregarding the policy. However, we find that it would have been very difficult to prevent the decedent from removing his binders in this case considering the great precipitancy with which he carried out this operation. We conclude that since the decedent's negligent conduct was the major contributing factor to the occurrence of the accident, he was appropriately assessed with the greater proportion of the fault.

REMITTITURS
The trial judge in his revised judgment entered remittiturs on three separate damage awards:
(1) the survival damage award,
(2) the loss of support award, and
(3) the mental anguish and loss of future love and affection award to the children.
Plaintiffs appeal the grant of the remittitur for all three separate awards.
At the time of trial of this case, LSA-C. C.P. art. 1814 allowed the trial court to enter a remittitur or additur in the alternative to a new trial on damages.[1] This article provided:
"If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the *1228 defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith."
In 1984, LSA-C.C.P. art. 2083 was amended to allow for appeals from a judgment reformed by a remittitur or additur. That article states:
"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814."
This court in Karl v. Amoco Production Co., 507 So.2d 263 (La.App.3d Cir.), writ denied, 512 So.2d 461 (La.1987) has held that when the quantum of a judgment reformed by remittitur or additur is challenged on appeal, appellate review is limited to the reformed judgment and the appellate courts are bound to affirm in the absence of an abuse of the trial court's discretion in fixing the award.
The first remittitur the plaintiffs would have us review is that which was granted on the survival action. The plaintiffs were originally awarded $250,000.00 by the jury for the pain and suffering of the decedent prior to his death. In his revised judgment, the trial judge disallowed any recovery on the survival action.
Damages for pain and suffering are properly awarded if there is a scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise. Temple v. Liberty Mutual Insurance Co., 330 So.2d 891 (La.1976); Pierre v. Lallie Kemp Charity Hospital, 515 So.2d 614 (La.App. 1st Cir.), writ denied, 515 So.2d 1111 (La.1987). However, where there is no indication that a decedent consciously suffered, an award for pain and suffering should be denied. Meche v. Gulf States Utilities Co., 444 So.2d 137 (La.App. 3d Cir.1983). There were no immediate witnesses to Mr. Cupstid's death. The plaintiffs rely solely on the testimony of the coroner, Dr. Polk, to establish the decedent's pain and suffering. Dr. Polk examined the body at the scene of the accident. He stated at trial that the cause of Mr. Cupstid's death was cardio-respiratory arrest, due to multiple injuries sustained to his chest, abdomen, pelvis, fractures of all his ribs, his pelvis and his left leg. When asked whether the decedent retained consciousness for any period of time, Dr. Polk testified that:
"Q. It would only be speculation, he may not have had any consciousness, am I correct?
A. He may not have, but my impression is that he did have for some time."
Even though Dr. Polk testified that it was his speculation that the decedent retained consciousness, the Certificate of Death, which Dr. Polk signed, states that Mr. Cupstid died "instantly." We find that there is not even a scintilla of evidence to support a pain and suffering claim. In the absence of other evidence, we can not say that the speculation of the plaintiffs' expert, who was anything but certain about whether the decedent was conscious for any amount of time, meets the scintilla test. Therefore, we find no error in the trial court's damages on the survival action.
The trial court's second remittitur involves the reduction of the award for loss of support. The jury awarded the plaintiffs a total award for loss of support of $368,000.00. The trial judge found that this figure was based on an income model which estimated the decedent's annualized earnings at $37,000.00. The trial judge noted that this figure was based on the decedent's income from his employment in the oil supply business. He determined that since there was no evidence that the decedent would return to the oil business, the plaintiff's expert's annualized earnings figure of $21,000.00, reflecting the decedent's income from the logging industry, was more appropriate. Accordingly, the trial judge reduced the total damage award by one-third.
*1229 The plaintiffs would have this Court reinstate the jury verdict, arguing that it was appropriate for the jury to base their award on the decedent's earnings in the oil supply business. Conversely, the defendants would have us reduce the award further, as the trial judge failed to take in account the part that taxes or expenses had not been reduced from the projected earnings.
We agree with the trial court that there is no evidence indicating that the decedent would return to the oil supply industry. In fact the evidence clearly establishes that Mr. Cupstid had sold his oil field service equipment and had purchased logging equipment. Furthermore, Mr. Cupstid oldest son testified that his father was going to buy a pulpwood truck and "put him on it." Thus, we find that the trial court correctly based Mr. Cupstid's annual wages on his employment in the logging industry.
The defendants claim that the annualized earnings figure should have been reduced to account for the payment of income taxes and social security. We find no merit in this argument, as it is well-established that gross income is a proper base for calculating the loss of earning capacity. LeBleu v. Dynamic Industrial Constructors, Inc., 526 So.2d 1184 (La.App.3d Cir.), writ denied, 528 So.2d 154 (La.1988); Menard v. Travelers Insurance Co., 240 So.2d 390 (La.App.3d Cir.1970). Consequently, we find no error in the trial judge's loss of support award.
The third and final remittitur the trial judge entered was the reduction of the children's awards for mental anguish and loss of future love and affection from $150,000.00 to $75,000.00. The wife of the deceased received $75,000.00 which the trial judge found to be adequate under the circumstances. The reason the trial judge entered the remittitur on the children's award was because he could find no rational reason why their award was twice that of the widow's award. There was no evidence that indicated that there was a special relationship between the father and the boys. All of the sons were at the age of majority or approaching it. Furthermore, one of the sons did not reside with his father. We agree with the trial court and find no error in its award to the sons of the decedent.
We pretermit discussion on the defendants' motion for a new trial based on jury misconduct, as we have upheld the trial court's decision on its other post-trial motions.
For the foregoing reasons, the decision of the trial court is affirmed. Costs are to be borne 75% by the plaintiffs and 25% by the defendants.
AFFIRMED.
NOTES
[1] This article has since been repealed by Acts 1988, No. 452, § 1.