LOBRANO, Judge.
Schwegmann Giant Supermarkets (Schwegmann) appeals a judgment granting Albert James “A.J.” Glynn, Jr. (Glynn)[1] damages for a fractured vertebrae sustained while unloading bread from a delivery truck at a Schwegmann’s Supermarket. This court must decide whether the trial court erred in (1) finding Schwegmann at fault; (2) assessing comparative fault 40% to Glynn and 60% to Schwegmann; and (3) awarding $20,000.00 in damages.
FACTS:
At approximately 4:30 a.m. on April 21, 1986, Glynn arrived at the Schwegmann Supermarket on Veterans Blvd. to make a delivery of bread for his employer, Holsum Sunbeam Bakeries. Glynn had been employed by Holsum for thirty years, and had been making morning bread deliveries to the Veterans store since its opening twenty-six years earlier. He normally backed his truck up to the store’s loading dock and unloaded bread directly from his truck to the dock. But on this particular morning, the loading dock was unlit. Unable to distinguish between various orders of bread in the back of his truck due to the lack of lighting, Glynn parked under a light in the parking lot and unloaded his bread onto a bread rack. After filling the rack, Glynn began to roll it to the loading dock. A wheel of the rack passed over a depressed drainage cover, causing the rack to tip over.
Glynn’s co-employee, Thomas Savarino (Savarino), approached to help Glynn upright the rack. After removing the damaged bread from the rack, Glynn and Sa-varino attempted to lift the rack upright. Glynn immediately screamed and fell to the ground. He had fractured a thoracic vertebrae.
Glynn was rushed to a hospital, where he remained for eight days. After his release from the hospital, Glynn remained in constant pain and was required to wear a neck brace. A diligent worker, Glynn returned to Sunbeam in August 1986, where he worked seven days a week despite intense pain. He took a five week vacation at the end of 1986 in an unsuccessful attempt to heal his back. Following his vacation, Glynn continued to work in pain until March 22, 1987, when he was diagnosed with leukemia and was forced to quit the job he had held for thirty years.
Glynn filed suit against Schwegmann on April 21, 1987. The parties stipulated to medical expenses of $3,752.58 and lost wages of $9,366.84, and proceeded to trial *11 on the issues of fault and general damages for pain and suffering. Trial was held May 30, 1989. Only Savarino and Glynn’s wife testified. The deposition of Dr. Robert Mí-meles was stipulated in evidence. The trial judge rendered judgment awarding him $20,000.00 in damages. Fault was assessed at 40% to Glynn and 60% to Schweg-mann. Schwegmann perfects this appeal. We affirm.
FAULT:
Schwegmann argues that the trial court erred in finding it at fault. First, Schweg-mann asserts that the issue of an unlit loading dock was not pled by Glynn and therefore the court should not have considered evidence of that fact. Second, the cause in fact of Glynn’s injury was his attempt to pick up the overturned bread rack, and not a breach of any duty on Schwegmann’s part.
a) Evidence of Lighting
Although Glynn’s petition does not specifically say “inadequate lighting” the record is replete with evidence that the loading dock lights were not on when Glynn arrived. Savarino testified that on some mornings, for unexplained reasons, the lights were not turned on and therefore they had to unload near a street light. Schwegmann did not object, and apparently was well aware of this testimony prior to trial. It did not come as a surprise, nor is there a showing of prejudice by its admission into evidence.
Furthermore, substantial justice requires a liberal interpretation of the pleadings. La.C.C.Pro. Art. 865; Haskins v. Clary, 346 So.2d 193 (La.1977). Issues not raised by the pleadings may be tried by the implied consent of the parties. La.C.C.Pro. Art. 1154. Even had Schwegmann objected to the testimony, the trial court could have allowed formal amendment of the pleadings. Id. We find no merit in this argument.
b) Cause in Fact
In Louisiana, recoveries in negligence must be based on a finding of fault under the duty-risk analysis. Forest v. State, Through the Louisiana Dept. of Transportation and Development, 493 So.2d 563 (La.1986). Under that analysis, a defendant is at fault when (1) the defendant owed a legal duty to protect the plaintiff from a particular risk of harm, (2) the defendant breached the legal duty, (3) the breach was the cause in fact of an accident, and (4) the plaintiff sustained damages in the accident. Id. A trial court’s finding of fault will not be disturbed in the absence of manifest error.
It is well established that businesses have a duty to protect invitees from unreasonably dangerous conditions existing on their premises. See e.g. Cupstid v. Harrison Hardwood Mfg. Co., 552 So.2d 1223 (La.App. 3rd Cir.1989), writ den. 558 So.2d 572 (La.1990); Blanchard v. Riley Stoker Corp., 492 So.2d 1236 (La.App. 4th Cir.1986), writ granted 498 So.2d 745 (La.1986), cause dismissed 505 So.2d 1129 (La.1987); Chandler v. Bunge Corp., 489 So.2d 275 (La.App. 4th Cir.1986), writ den. 492 So.2d 1219 (La.1986); Clark v. Cit Con Oil Corp., 150 So.2d 784 (La.App. 3rd Cir.1963), writ refused 152 So.2d 62, 244 La. 395 (1963); cf. Foggin v. General Guaranty Ins. Co., 195 So.2d 636, 250 La. 347 (1967). We conclude that the trial court was not clearly wrong in imposing a duty on Schwegmann to provide adequate lighting at a loading dock where delivery men are required to make pre-dawn deliveries. The court heard uncontradicted testimony from Savarino that delivery men were expected to make pre-dawn deliveries, and that Schwegmann’s processed such deliveries every morning. Savarino also testified that lights were available in the loading dock area but at least one or two mornings each month they were not on. The record is clear the area was unlit the morning of Glynn’s injury.
To determine if Schwegmann’s failure to light the loading dock was a cause of Glynn’s injury we must ascertain whether it (the unlit area) was a substantial factor without which the accident would not have happened. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976); Spencer v. Magee, 563 So.2d 564 (La.App. *12 4th Cir.1990), writ den. 567 So.2d 1123 (La.1990).
The evidence strongly suggests that the products delivered, especially bread, had to be in the Schwegmann store prior to opening time. Almost every morning Schweg-mann had the loading dock lit for the early deliveries. The loading dock’s purpose is obvious. For some unknown reason, the morning of Glynn’s injury, the lights were not turned on forcing Glynn to unload his truck near a street light some distance away. As Glynn was pushing the rack carrying the bread it tipped over. Either Glynn was injured when the rack fell or while he was attempting to pull it upright. The record is clear that he was, in fact, injured.
We find no error in the conclusion that had the lights been turned on, Glynn would have unloaded his bread onto the loading dock as he had done the previous twenty-six years. “But for” the unlit loading dock, Glynn’s injury would not have occurred. The purpose of the lighted loading dock is to permit trouble free pre-dawn deliveries. The absence of lighting created a foreseeable risk of harm to the delivery men. Schwegmann knew or should have known that when the loading dock was unlit the delivery men would use an area where there was adequate lighting. The evidence supports Schwegmann’s fault in this regard.
COMPARATIVE FAULT
Schwegmann argues that the trial court erred in allocating comparative fault 60% to Schwegmann and 40% to Glynn. We affirm the allocation of fault.
The allocation of comparative fault is a factual determination within the trial court’s discretion, and will not be disturbed in the absence of manifest error. Brightman v. Regional Transit Authority, 543 So.2d 568 (La.App. 4th Cir.1989); Jeansonne v. Corbett, 496 So.2d 1346 (La.App. 3rd Cir.1986), writ den. 499 So.2d 942 (1987). Schwegmann has not offered, and we cannot find, a basis for concluding that the trial court committed manifest error in its allocation of fault. Glynn might have been able to avoid hitting the drain hole; upon failing to do so, he might have avoided lifting the bread rack. In any event, he would not have been required to act prudently if not for the initial fault of Schweg-mann in failing to provide a safe place to unload the delivery truck. Under these facts, we cannot say that the trial court abused its great discretion in allocating comparative fault.
QUANTUM
Schwegmann argues that the trial court erred in awarding $20,000.00 in general damages.
Review of a damage award requires, first, a determination of whether there has been an abuse of discretion by the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Weaver v. Siegling, 569 So.2d 97 (La.App. 4th Cir.1990), writ denied 572 So.2d 67 (La.1991). Only upon finding an abuse of discretion may the reviewing court resort to prior damage awards to determine an appropriate award. Id.
Glynn was admitted to East Jefferson Hospital because of a compression fracture of the T-12 vertebrae. He was treated by Dr. Mímeles[2] until the latter part of August, 1986. He did not return to work until January of 1987, although he still had complaints of pain in the lower back and numbness in the legs.
Savarino testified that Glynn was in intense pain when he attempted to lift the bread rack. Mrs. Glynn testified as to the unremitting pain her husband suffered from that time forward. Though Glynn continued to work with Sunbeam, he did so in great pain because he was fearful of losing his job. He had to wear a back brace and remained largely immobile when not at work. As Mrs. Glynn stated: “He just ceased being my husband. He was not the A.J. that he was before.”
*13 We find no abuse of discretion in the award. Accordingly, for the reasons assigned, we affirm the trial court judgment. All costs of this appeal to be paid by appellant.
AFFIRMED.

. Glynn died of leukemia after filing suit. His surviving spouse, Yvonne M. Glynn, was substituted as the plaintiff in this matter. The case was tried in May of 1989 however because the record was lost judgment was not rendered until January of 1991.

. Dr. Mímeles' deposition was introduced in lieu of his testimony. We were unable to locate that deposition in the record.