526 So.2d 1184 (1988)
Clyde S. LeBLEU, Plaintiff-Appellee-Appellant,
v.
DYNAMIC INDUSTRIAL CONSTRUCTORS, INC., Geosource, Inc., Commonwealth Electric Company, Defendants,
Geosource, Inc., Appellant,
Hartford Accident & Indemnity, Intervenor-Appellant.
No. 87-169.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Writ Denied June 2, 1988.
*1185 Baggett & McCall, Robert C. McCall and Norman Williams, Lake Charles, for plaintiff-appellee-appellant.
Carmouche, Gray & Hoffman, Donald C. Brown, Lake Charles, for defendant-appellant-appellee.
*1186 Guillory & McCall, Robert E. Guillory, Lake Charles, for intervenor-appellant.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Charles N. Harper, and Raggio, Cappel, Chozen & Berniard, Chris Trahan, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
DOMENGEAUX, Judge.
Plaintiff, Clyde S. LeBleu, sued the defendants, Dynamic Industrial Constructors, Inc., Geosource, Inc., and Commonwealth Electric Company for injuries he sustained as a result of an accident occurring on February 3, 1983. Hartford Accident & Indemnity, the worker's compensation carrier for the plaintiff's employer, Thacker Construction Co. intervened for recovery of worker's compensation payments paid to the plaintiff. Prior to the trial, Dynamic Industrial was dismissed with prejudice. After a trial on the merits, the Trial Judge found Geosource 100% at fault in causing the plaintiff's injuries, Commonwealth Electric 0% at fault, and the plaintiff 0% contributorily negligent. The plaintiff was awarded $437,551.78 in total damages. Intervenor Hartford was granted indemnification for the worker's compensation payments paid to the plaintiff. Geosource, the plaintiff, and Hartford have appealed this ruling.

FACTS
Defendant, Commonwealth Electric Company leased an office trailer, measuring 8 by 25 feet, from defendant Geosource, Inc. for use on a construction project at the Sulphur Mines job site in Calcasieu Parish. The office trailer was placed on cinder blocks and was used at this site for over three years by Commonwealth. Sometime during the rental period, the tongue jack that came with the office trailer was stolen. Although Commonwealth was aware that the tongue jack was missing, they did not replace it as they did not need a jack in their use of the trailer. When Commonwealth's construction project was almost completed in January, 1983, they contacted Geosource to pick up the trailer. Commonwealth did not inform Geosource that the tongue jack was missing.
On February 3, 1983, Geosource's employee, Douglas White arrived at the Sulpher Mines site to pick up the trailer. After realizing that the tongue jack was missing, White searched his truck for an hydraulic jack that he usually carried for just such a situation. Unfortunately, he had not brought the jack this time, so he inquired around the job site for another jack. Unable to locate one, White decided to improvise and hitch up the trailer through an alternative method. Using his truck's bumper for leverage, White intended to lift the trailer tongue with a pry bar, remove the cinder blocks on which the trailer rested and guide the trailer tongue onto the truck's bumper hitch.
Thacker Construction Company was also completing a project at the Sulpher Mines site. The plaintiff, Clyde LeBleu, then 56 years old, was an employee of Thacker Construction. A hunting accident 40 years earlier cost Mr. LeBleu his left leg and he now walked with the aid of a prosthetic device.
Observing White's efforts, LeBleu and another Thacker employee, Robert Baker volunteered to help White hitch up the office trailer. LeBleu positioned himself at the trailer hitch while Baker removed the cinder blocks. White and LeBleu then lowered the pry bar and tried to guide the trailer tongue onto the hitch. However, the tongue glanced the truck's bumper hitch and fell onto Mr. LeBleu's right leg, fracturing his ankle.
After the accident, White borrowed an hydraulic jack from a nearby service station and proceeded to connect the trailer and return it to Geosource.
The Trial Judge held Geosource's employee, White to a higher degree of care than the two volunteers and found Geosource to be 100% at fault in causing the accident. The Trial Judge also found Commonwealth Electric to be 0% at fault and the plaintiff, LeBleu was found to be 0% negligent. The Court also recognized Hartford's right of intervention for reimbursement *1187 of the worker's compensation payments made to the plaintiff. Geosource, LeBleu and Hartford have appealed the Trial Judge's ruling and award.

STRICT LIABILITY OR NEGLIGENCE
The plaintiff sued both Geosource and Commonwealth under La.C.C. art. 2317 and argued that both defendants were strictly liable as custodians of a thing that presented an unreasonable risk of harm. Alternatively, the plaintiff contended that both defendants were negligent in causing the accident. The Trial Judge ruled that strict liability was inapplicable but Geosource was 100% negligent in causing the accident.
Geosource has appealed the Trial Judge's ruling finding them 100% at fault. Geosource argues that the Trial Judge erred in not holding Commonwealth strictly liable as the custodian of the office trailer. Alternatively, Geosource argues that Commonwealth was negligent.
Initially, Geosource contends that because the trailer was in the care and custody of Commonwealth for three years prior to the accident and at the time the accident occurred, Commonwealth should have been held strictly liable for any damage caused by the absence of the tongue jack. Geosource argues that the absence of the tongue jack was an unreasonably dangerous defect and hence, made Commonwealth strictly liable for any damage caused by the absence of the tongue jack.
La.C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....
In Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the Court distinguished a cause of action in strict liability from one in negligence as follows:
In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective).
. . . . .
Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case. 418 So.2d at 497.
In this instance, both Geosource and Commonwealth knew the tongue jack was missing prior to the accident. Because of this knowledge, it is unnecessary to presume or impute knowledge on the part of either defendant of the risk of harm that was created by the missing tongue jack. Instead, the liability of either party depends on the subsequent determination of whether either party acted unreasonably in protecting persons from the harm resulting from this known risk. This is essentially a *1188 negligence determination. Kent v. Gulf States, supra. As stated in Kent, the extent of this duty to protect depends on the particular facts and circumstances of each case.
Therefore, in this instance, as there was no need to presume knowledge on the part of either defendant, in order to recover under either strict liability or negligence, the plaintiff had to show (1) that the jackless trailer was in the custody of the defendant, (2) that it presented an unreasonable risk of harm, and (3) that the injury was caused by the defect.
The Trial Judge found that Commonwealth did not have control over the trailer at the time of the accident. Hence, they were not liable for the plaintiff's injuries resulting from the attempted movement of the trailer. Geosource argues that this was an erroneous factual finding.
We find no error in the Trial Court's determination that Commonwealth did not have custody of the trailer when the accident occurred. The simple fact that Geosource was removing the trailer from the site showed that Commonwealth no longer had custody over the trailer. Furthermore, even though Commonwealth was the custodian of the trailer when the jack was stolen, we find that the absence of the tongue jack during the period the trailer was used by Commonwealth did not present an unreasonable risk of harm to anyone. It was not until the trailer was to be moved that the absence of the tongue jack presented danger to someone. At this point, the trailer was no longer in the custody of Commonwealth, but had been transferred to Geosource. Stated another way, under Louisiana's duty risk analysis, the duty Commonwealth owed to Geosource to replace a stolen jack did not encompass the risk that Geosource would attempt to remove the office trailer with improper equipment and ultimately injure someone. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Additionally, we find no error in the Trial Court's determination that Geosource's employee, White acted unreasonably (i.e. created an unreasonable risk of harm) when he attempted to hitch the office trailer to his truck by using a pry bar. The weight and size of the trailer was far too great to be moved without the proper tools. Also, the ease with which White procured a jack from a nearby service station further indicates his imprudence in using the pry bar. Therefore, we find no error in the Trial Court's determination that Geosource was liable for the plaintiff's injuries caused by their employee.
Additionally, we find no error in the Trial Court's ruling that the plaintiff was not contributorily negligent in causing the accident. LeBleu did not act unreasonably under the circumstances. He voluntarily assisted White, a person who was well versed in the delivery and removal of office trailers. The plaintiff was a general construction worker, unfamiliar with connecting an office trailer to a trailer hitch through the use of a pry bar, and neither aware of, nor put on notice of any impending danger. Assumption of the risk is not applicable as LeBleu did not know of the risk or appreciate its unreasonable character. Dorry v. LaFleur, 399 So.2d 559 (La. 1981).

QUANTUM
The Trial Judge awarded the plaintiff the following amounts: $16,615.03 in past medical expenses, $5,000.00 in future medical expenses based on 1.5 to 2 years of future treatment; $115,936.75 in lost and future wages, and $300,000.00 in general damages; a total amount of $437,551.78. Geosource appeals the Trial Judge's general damage award as excessive and appeals the award for future wages as improperly based on non-credible evidence. The plaintiff also appeals the general damage award as inadequate and intervenor Hartford has appealed the award for future medical expenses as inadequate.
In the assessment of damages in cases of quasi-offenses much discretion must be left to the Judge or jury. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Factors to be considered in assessing quantum for pain and suffering are the severity *1189 and duration thereof. Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3rd Cir.); writ denied, 412 So.2d 99 (La.1982). A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abuses its much discretion in making the award, and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded to the Court. La.C.C. art. 1999; Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
The plaintiff's injury consisted of a fractured right ankle. After an operation complications arose and the ankle developed sympathetic dystrophy resulting in swelling, pain and stiffness. As the plaintiff could not use the ankle, atrophy resulted and eventually the plaintiff's knee developed a painful condition called chondromalacia. At the time of trial, two years after the accident, the plaintiff still had pain and stiffness in his ankle and knee, a condition which was aggravated by the fact that the plaintiff had to place most of his weight on his only remaining leg. Mr. LeBleu has become totally disabled and can walk only with extreme effort and for short periods of time. The pleasures of everyday life such as gardening, hunting and even driving himself around are no longer available to the plaintiff.
Dr. William T. Cloyd, a psychiatrist who saw the plaintiff testified that the plaintiff was also suffering from traumatic neurosis. Once an active person with no history of emotional problems, the plaintiff was now quiet, withdrawn, despondent, and occasionally suicidal. He has also become greatly frustrated, restless and nervous and was experiencing great difficulty in adjusting to his lack of mobility.
While the plaintiff's initial injury was only a fractured ankle, and while the award might appear to be in the upper permissible range, due to the extenuating circumstances of the plaintiff's previously lost leg and the resulting total disability, we do not find the Trial Court's award of $300,000.00 for general damages to be an abuse of discretion.
Geosource also argues that the award for lost future earnings was improperly based on inaccurrate evidence. Geosource argues that the Trial Judge improperly based the award on the future growth rate of the Lake Charles area and not on the economic condition that existed at the time of the injury. Additionally, Geosource argues that the Trial Judge erred by estimating the plaintiff's future gross income and not his future net income.
The proper method to compute loss of earnings is by using gross income rather than net income. Harper v. Liggett Group, Inc., 459 So.2d 1260 (La.App. 1st Cir.1984), writ denied, 462 So.2d 655 (La. 1985); Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26 (La.App. 3d Cir. 1980). Hence, the Trial Judge committed no error in basing the plaintiff's future lost wages on his expected gross income rather than his expected net income.
Impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981).
Loss of wages can properly be computed on the amount the plaintiff would in reasonable probability have been earning at the time of the trial, although he was earning less at the time of the accident. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The Trial Judge accepted the testimony of Dr. Donald Cornwell, a consultant economist who determined that, as of the date of trial, the plaintiff suffered a future loss of income of $65,855.43. Doctor Cornwell based his estimate on the plaintiff's remaining work life expectancy of 5.18 years by assuming that the plaintiff would leave the work force at age 64.32.
Contrary to Geosource's contentions, a review of Doctor Cornwell's testimony indicates that he calculated the plaintiff's loss of future earnings by using a lower hourly rate of pay than the plaintiff was receiving at the time of the accident, in accordance *1190 with the prevailing hourly rate in the community at the time of trial. Doctor Cornwell calculated the plaintiff's future earnings based on 31 hours per week, the same amount of hours per week the plaintiff had worked prior to the accident. As there is no evidence indicating that the plaintiff would have worked less hours per week after the accident, there appears no error in the Trial Court's accepting a calculation based on this assumption. In all other respects, the future earnings calculation appears to have been properly determined. Hence, we find no manifest error in the Trial Court's award of $65,855.43 for future lost income based on this testimony.
Intervenor Hartford, the worker's compensation carrier appeals the Trial Court's award of $5,000.00 for future medical expenses as inadequate in light of the plaintiff's estimated future medical needs.
The Trial Judge awarded $5,000.00 for future medical expenses. Doctor Cohen, the plaintiff's treating physician stated that the plaintiff could be a candidate for future orthoscopic surgery. However, at present, the plaintiff is reluctant to undergo such a procedure and at this point, Doctor Cohen could not say with certainty that the subsequent surgery was mandatory. Doctor Cloyd, the plaintiff's psychiatrist, testified that the plaintiff will need 1½ to 2 years of future psychiatric treatment and his fees were set at $85.00 per hour. The record shows that no specific number of visits was recommended and, as of the trial, the plaintiff had only seen Doctor Cloyd on three occasions. Since the plaintiff's future operation is speculative, and since the amount of suggested psychiatric treatments is indefinite, it appears that the Trial Judge's award of $5,000.00 is not an abuse of discretion.
For the above and foregoing reasons we affirm the ruling of the Trial Court. Costs on appeal are to be paid by Geosource.
AFFIRMED.