533 So.2d 1005 (1988)
Farrell CASANOVA, et al.
v.
Ann BALLARD, et al.
No. 87 CA 0788.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Rehearing Granted for Limited Purpose, Otherwise Denied November 30, 1988.
Writs Denied February 17, 1989.
*1006 Phillip Hager, New Orleans, for plaintiffappellant Farrell Casanova, et al.
Robert Kleinpeter, Baton Rouge, for defendant-appellee Ann Ballard.
J. Wayne Anderson, New Orleans, and Arthur Macy, Hammond, for LP & L, appellee.
Before WATKINS, SHORTESS, SAVOIE, LANIER and CRAIN, JJ.
CRAIN, Judge.
Farrell Casanova and James Walker were injured when the television antenna which they were attempting to install adjacent to a mobile home came into contact with an overhead 13,800 volt bare electrical transmission line. The antenna was intended for the use of Casanova's daughter and son-in-law who planned to move into the mobile home which was located in Ballard's Trailer Court in the rural area of Arcola, Louisiana. Casanova and Walker instituted this action against Ann Ballard, D/B/A Ballard's Trailer Court and Louisiana Power and Light Company (LP & L). LP & L instituted a third party action against Ballard seeking indemnity or contribution. The State of Louisiana, through the Department of Health and Human Resources, on behalf of Lallie Kemp Charity Hospital intervened seeking reimbursement for hospitalization, medical services and supplies rendered and furnished to plaintiffs.
After trial on the merits, judgment was rendered in favor of defendants. From this judgment plaintiffs appeal alleging that the trial court erred in failing to determine fault or negligence on behalf of defendants. DHHR did not appeal the dismissal of their intervention nor answer plaintiffs' appeal. Consequently, the judgment as to them is final.

NEGLIGENCE OF LP & L AND BALLARD
Ballard's Trailer Court was developed in 1973 by Fred Ballard, now deceased. The *1007 mobile home park was designed in an oval shape, encircled by a driveway. Water, sewerage and electrical lines were to run down the center of the oval in an east-west direction with mobile homes parked perpendicular to the utility lines. After obtaining a servitude agreement from Ballard, LP & L installed overhead electrical transmission lines dissecting the mobile home park in an east-west direction. There is some question as to whether the electric transmission lines dissected the property into two equal parts. However, the location and placement of the power-lines was apparently approved by Mr. Ballard.
The electrical distribution lines running through the mobile home park consisted of a 13,800 volt bare (uninsulated by wrapping or covering) primary conductor and a triplex (insulated by wrapping) secondary line.
The National Electric Safety Code (NESC) requires at minimum a 20 foot vertical clearance over driveways and streets and at minimum an eight foot clearance over the tops of buildings and structures for the installation of bare electric wires conducting 13,800 volts of electricity.
At the point of contact the primary line was approximately 24.47 feet above ground and fifteen feet above the top of the mobile home. The height of the television antenna was 25.95 feet. At the time of the accident, the mobile home was parked directly under the overhead electrical transmission lines and LP & L was aware of its location.
The liability, if any, of LP & L must be determined under a duty-risk analysis. Electric transmission companies have a continuing duty to "exercise the utmost care to reduce hazards to life as far as practicable." Hebert v. Gulf States Utilities Co., 426 So.2d 111, 114 (La.1983). They are not required to guard against circumstances which are not reasonably foreseeable. Hebert, 426 So.2d at 114.
It is uncontested that the overhead installation of highly energized bare wire in compliance with the NESC is common industry practice. However, under certain facts and circumstances the practice of insulation by isolation in compliance with the NESC is insufficient to protect the public from the hazards associated with the transmission of electricity. Wooten v. Louisiana Power & Light Co., 477 So.2d 1142 (La.App. 1st Cir.1985).
The evidence indicates that there is a frequent turnover of residents in mobile home parks, that these residents install television antennas adjacent to their mobile homes, and that television antennas installed in rural areas are frequently at least 25 feet in height. Thus, it is readily foreseeable that during the installation of a television antenna, the antenna may come into contact with a highly energized bare electric transmission line located directly above the mobile home, resulting in the electrocution of the installers. LP & L was aware that mobile homes were parked directly under the bare, highly energized electric wire. The employee who connected the service was aware that this particular trailer was parked under the transmission line. However, no corrective action was taken to prevent the type injury that occurred. The injuries incurred by plaintiffs are within the scope of the risk which the duty was designed to prevent.
Ballard had previously allowed mobile homes to be parked under the electric transmission lines and was aware that the mobile home in question was parked under the power line when the accident occurred. Further, she knew or should have known of the hazards presented by this condition. The duty of a landowner is to "act reasonably in view of the probability of injury to others". Thomas v. State Department of Revenue, 393 So.2d 416, 417 (La.App. 1st Cir.1980). The injuries suffered by plaintiffs are within the scope of the risk the duty was designed to protect.
After careful review of the record we find the trial court was clearly wrong in failing to find defendants were negligent.

NEGLIGENCE OF PLAINTIFFS
The actions of plaintiffs were a substantial cause of the accident which resulted in their injuries. Plaintiffs were aware that the electric transmission lines were *1008 located directly above the mobile home. They alleged at trial that they were only aware of the insulated secondary lines, not the bare primary line. However, they stated that they thought they could avoid contact with the lines and proceeded to erect the antenna in close proximity thereto.
A person has the duty to exercise ordinary care for his own safety. See Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La.1981). This plaintiffs failed to do. After a careful review of the record we find that the trial court was not clearly wrong in finding plaintiffs negligent. We apportion 70% negligence to Casanova and Walker, 15% negligence to LP & L and 15% negligence to Ballard. Contrary to the argument of LP & L we do not find that the evidence warrants a finding of greater negligence on the part of Ballard than LP & L.

DAMAGES
When the record is complete and the trial court has rejected plaintiffs' demands we are empowered to award damages. La.C. C.P. art. 2164; Jones v. P.K. Smith Chevrolet-Olds, Inc., 444 So.2d 1372 (La.App. 2d Cir.1984).

a) Casanova

Casanova was admitted to Lallie Kemp Hospital on August 20, 1983, with third degree burns of the feet, hands, back and abdomen. He underwent numerous surgical procedures for debridement of the wounds, skin grafts and amputation of the big toe of the right foot. He was treated extensively to the time of trial for decubitus ulcers of the lower extremities related to the accident. Casanova had a prior history of diabetes which affected the healing process and there is a possibility that the right leg may require amputation in the future.
Dr. William Black, neuropsychologist, stated that plaintiff suffered from post traumatic stress syndrome and moderate to significant diffuse cortical dysfunction. He was unable to state with any certainty, however, whether the diffuse cortical dysfunction was primarily attributed to the accident or to drug abuse, uncontrolled diabetes or two myocardial infarctions which predated the accident. Casanova was approximately 57 years old at the time of trial and had been retired since 1973.
After considering the evidence we find that an award of $200,000 is appropriate for the general damages sustained by plaintiff. We also award plaintiff $29,669.40 for medical expenses.

b) Walker

Walker was approximately 27 years old at the time of the accident. He was admitted to Lallie Kemp Hospital on August 20, 1983, for third degree burns of both feet and minor burns on both hands and chest. He was transferred to Baton Rouge General Hospital on September 1, 1983. Thereafter, he underwent several surgical procedures, including amputation of the right great toe and a portion of the left great toe, skin grafts and debridement. He was discharged from medical care in July, 1984. He has a 15% loss of function in the right foot and 5% in the left. He is limited in performing recreational and occupational activities requiring squatting, ladder climbing, lifting of greater than 35 pounds or standing for more than four hours at a time.
Walker alleged neurological and psychological damage in addition to the damages sustained to the lower extremities. However, these were not proved by a preponderance of the evidence.
Plaintiff seeks damages for past and future loss of earnings. Walker has an eleventh grade high school education and received vocational training as a mechanic and welder. In 1981, Walker earned $21,290; in 1982, $4,638; in 1983, $12,419; and in 1984, $11,780. Walker worked sporadically after the accident. Subsequent to the accident he was hospitalized for alcohol and drug addiction allegedly caused by dependence to pain medication. He subsequently was incarcerated, in his words, for the attempted strangling of his wife, and was paroled after serving 8 months in prison. He violated parole and was serving 2 ½ years in prison at the time of trial.
*1009 After considering the evidence we award plaintiff $16,362.87 for medical expenses and $100,000 for general damages and loss of past and future income.

DECREE
The judgment of the trial court is reversed in part and rendered in favor of plaintiffs against defendants. Plaintiffs are 70% at fault, respectively, and defendants are 15% at fault, respectively. The medical expenses and damages awarded are reduced accordingly, with legal interest due on plaintiff's award from date of judicial demand until paid. The third party demand of LP & L against Ballard is recognized for the 15% of the damages attributed to Ballard's negligence. LP & L and Ballard are cast equally for costs.
REVERSED AND REMANDED.
SHORTESS, J., concurs in the majority treatment of liability but dissents as to what I feel is the inadequate award to Walker.
LANIER, J., dissents. The findings of fact of the trial court are not clearly wrong.