I MAMES C. GULOTTA, J., Pro Tern.
On June 3, 1993, Robert Castay was injured while working at the ADM Grow-mark (ADM) facility in St. Charles Parish. Castay was employed as a welder with Quality Fab and Mechanical Co. (Quality Fab), who contracted with ADM, owner of two grain dryers, to demolish the dryers. Bruce Bourgeois, the president of Quality Fab, realized that he did not have the expertise,to handle such a large demolition job, so he subcontracted the work to Superior Scrap. The owner of Superior Scrap, Barry Grundmann, assembled a work crew of four men, including Castay and defendant, Kelly Teel, of Kelly Welding Service, for the purpose of demolishing the dryers. They began the demolition job on June 1, 1993. Castay’s duty was to block off the connections between the dryers and the elevator during the preparation stage of *51 work and to remain at the worksite during the remainder of the demolition to act as a liaison between the-Superior Scrap crew and ADM. The remainder of the crew shoveled the grain out of the jabottom of the dryer and used a water hose to wash the grain out of the dryer from the bottom of the dryer. The Superior Scrap crew then began demolishing the dryers using cutting torches. On June 3, the crew had completed removing the bottom portions of the dryers and began removing the tops. It was on this day that Castay’s accident occurred.
Castay was positioned at the top of the north dryer to perform the job of disconnecting the silo from the dryer unit. Bourgeois, plaintiffs employer, arrived at the ADM facility to view another job that Quality Fab was performing for ADM. However, when Bourgeois observed the difficulty the crane operator had in lifting the dryer, he ordered that he terminate the task. Bourgeois then proceeded to the top of the dryer to join Castay. Meanwhile, another member of the crew, Ernest Smith, used a cutting torch in the south dryer.
Suddenly, the dryer that the men were standing on exploded and fire engulfed them. Castay leapt from the north dryer to the south dryer, over an 80-foot void and fell into a ladder. Despite his injuries, Castay managed to move himself to the ■basket of the crane, and after approximately 45 minutes, the men were evacuated. He was taken to St. Charles Parish Hospital and admitted to the Intensive Care Unit. He remained hospitalized for ten days with severe burns and a low back injury.
Plaintiff filed suit against ADM, Kelly Teel, Superior Scrap, and its insurer, Essex Insurance. Castay settled with Kelly Teel and ADM prior to trial. Plaintiffs claims against Superior Scrap, Essex, and Quality Fab, Castay’s employer, proceeded to a jury trial. The jury found Superior Scrap and its insurer, Essex, liable for plaintiffs injuries and apportioned fault as follows:
ADM Growmark/ADNAC 55 percent
Quality Fab 25 percent
Superior Scrap Metals, Inc. 20 percent
Kelly Teel 0 percent
13Robert Castay 0 percent
The jury then awarded damages: the following
Robert Castay (general damages) $ 750,000.00
Past Lost Wages $ 137,138.00
Future Lost Wages $ 183,334.00
Past Medical Expenses $ 41,210.00
Future Medical Expenses $ 84,000.00
Debra Castay (loss of consortium) $ 250,000.00
TOTAL $1,445,682.00
The plaintiff filed a motion for new trial, for re-argument only, to reallot the employer’s percentage of fault to the other defendants found liable. The defendants filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for new trial on both liability and damages. The trial judge granted the plaintiffs new trial motion on fault quantification, and reallocated the employer’s fault, increasing Superior Scrap’s percentage of fault to 26.7 percent in a September 27, 1999 judgment and then, on January 5, 2000, increased the percentage to 50 percent against Superior Scrap and its insurer. The trial judge denied the defendant’s new trial motion and granted the defendants’ JNOV motion only to decrease Deborah Castay’s loss of consortium award from $250,000.00 to $75,000.00.
The court’s final judgment was as follows:
General Damages: $750,000.00
Past Lost Wages: $137,138.00
Future Lost Wages: $183,334.00
Past Medical Expenses: $ 41,210.00
Future Medical Expenses: $ 84,000.00
Loss of Consortium (Deborah Castay): $ 75,000.00
|4The trial court then reduced the above amounts to 50 percent, the reallocated fault of Superior Scrap and Essex.
Defendants-appellants; Superior Scrap, and its insurer, Essex, appeal the trial *52 court’s judgment on five separate grounds: (1) the reallocation of the employer’s fault to increase Superior Scrap’s liability from 26.7 percent of the total judgment to 50 percent; (2) causation, specifically related to the owner’s alleged failure to hose the dryer from the top; (8) excessiveness of damages awarded to the plaintiff for pain and suffering and to his wife for loss of consortium; (4) plaintiffs recovery of medical expenses paid by the compensation carrier since the employer/compensation carrier and Superior Scrap were solidarily liable, and further, allowing the jury to hear the amount of the medical bills paid by the compensation carrier, and (5) failure of the trial judge to find the plaintiff comparatively at fault. For the following reasons, we amend in part, and, as amended, affirm.
In their first assignment of error, Superior Scrap and Essex contend the trial judge erred in reallocating the fault of the statutorily immune employer (Quality Fab) to increase their liability from 26.7 percent to 50 percent. They contend that the Louisiana Supreme Court’s reversal of the Third Circuit case upon which the trial judge relied in granting the new trial on that issue requires us to reinstate their fault at 26.7 percent.[1] They argue that the supreme court held in Farbe that a plaintiff cannot recover the share of the settling tortfeasor from a non-settling tortfeasor, and thus, here, plaintiff cannot recover the employer’s amount of fault from Superior and Essex.
While we agree that the trial court’s final re-allocation of fault to the extent of 50 percent is incorrect, the defendant’s argument is misdirected. As we appreciate the Court’s decision in Farbe, a non-settling tortfeasor is entitled to a credit of the percentage of fault allocated to a settling tortfeasor. In Farbe, one of |athe two parties liable settled prior to trial. The trial court determined that the settling defendant was 80 percent at fault, while the non-settling defendant was 20 percent at fault. The appellate court affirmed the trial court’s findings of fault but amended the judgment to provide that the non-settling defendant remained solidarily liable for 50 percent of the judgment, under La. Civ.Code art. 2324, prior to the 1996 prospective amendment, although it had only been allocated with 20 percent of the fault. The supreme court reversed the appellate court’s amendment to the fault allocation and reinstated the trial court’s 20% finding of fault against the non-settling defendant. The supreme court reasoned, using the precise facts before it, that if the settling defendant had not settled, and the non-settling defendant had been forced to pay 50 percent of the judgment, although it only had 20 percent liability, it would then have had a right of contribution against the settling defendant to recover that 80 percent paid in excess of its assigned fault. The supreme court explained, however, that the right of contribution is lost when a defendant settles. This, according to the supreme court, is why the non-settling defendant is entitled to a credit for the amount of the settling defendant’s fault.
The situation with which we are presented, however, does not fit simply into the supreme court’s analysis in Farbe. Here; we have a settling defendant, a non-settling defendant and its insurer, and a statutorily immune employer. The question here is whether a non-settling defendant and its insurer are liable for up to 50 percent of a judgment in which a settling defendant has been held 55 percent liable, but also in which a statutorily immune employer has been held 25 percent liable. *53 Farbe does not address that issue. We, therefore, must first determine who, if anyone, is responsible for an immune employer’s percentage of fault.
This question has been squarely addressed in Gauthier v. O’Brien, 618 So.2d 825 (La.1993). In Gauthier, the Louisiana Supreme Court was presented |fiwith the question of whether an immune employer’s fault should be quantified and answered that question in the affirmative. Because the question arose pretrial, in the form of a Motion to Strike, Motion for Partial Summary Judgment & In the Alternative, Motion in Liminie, the supreme court then remanded the matter to the trial court, noting that after the jury quantifies the fault of all parties, including the employer, the judge “should disregard the proportion of fault assessed to the employer and reallot the proportionate fault of all other blameworthy parties.” Gauthier, 618 So.2d at 833. Although Gauthier was overruled by the supreme court in Cavalier[2], Cavalier was superceded by statute[3] as explained in Keith v. USF&G, 96-2075 (La.5/9/97), 694 So.2d 180. The current state of the law on assessment of employer fault is essentially what was decided by the court in Gauthier.
The question, then, before us is whether the trial judge erred in realloting the employer’s proportion of fault to both ADM (a settling defendant) and Superior Scrap (a non-settling defendant). From our understanding of the Gauthier rationale, the employer’s fault is reallocated proportionately to all other blameworthy parties. We interpret that to mean whether the other blameworthy parties have settled or have not settled. We, therefore, conclude that the trial judge correctly reallocated Quality Fabrication’s (plaintiffs employer) fault to both ADM (pre-trial settling defendant) and Superior Scrap (and its insurer, Essex).
We now turn to the question of whether the trial judge correctly increased Superior Scrap’s percentage of fault to 50 percent in the new trial solely on that issue. We find that reallocation to be error. Since the trial court’s judgment, as Essex (Superior Scrap’s insurer) correctly notes, the decision upon which he relied has been reversed. In Farbe v. Casualty Reciprocal Exchange, supra, the Louisiana Supreme Court reversed the Third Circuit’s increase of a defendant’s |7fault from 20 percent to 50 percent, the maximum amount of solidary liability under La. Civ. Code art. 2324, as it existed prior to the 1996 prospective amendment. The supreme court determined that the non-settling defendant was entitled to a credit in the amount of the fault of the released tortfeasor, reasoning that the non-settling tortfeasor was deprived of the right of contribution.
Likewise, here, the remaining defendants, Superior Scrap and Essex, are deprived of the right of contribution from ADM, because of ADM’s pre-trial settlement, and is instead entitled to a credit of the percentage of fault assigned to ADM. Therefore, the trial judge erred in increasing Superior Scrap and Essex’s percentage of fault from 26.7 percent to 50 percent. Accordingly, we reinstate Superior Scrap and Essex’s percentage of fault at 26.7 percent.
Superior Scrap and Essex next contend that the plaintiffs failed to prove that their alleged fault was a legal cause of the accident. We disagree.
*54 A trial court’s factual findings cannot be disturbed in the absence of manifest error. If the trial court’s findings are reasonable when viewed as a whole, an appellate court may not disturb those findings. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Dr. Ali Reza, qualified by the trial court as an expert in the field of cause and origin of fires, testified that the cutting torches used by Superior Scrap were the cause of the ignition of the dust particles. He further testified that if the dryers had been properly cleaned prior to the cutting operation, the explosion would not have occurred.
The deposition of Barry Grundmann, the owner of Superior Scrap, and the testimony of Kelly Teel, the welding contractor, also support the jury’s factual finding of liability on the part of Superior Scrap. Grundmann testified in his deposition that ADM and Quality Fab personnel instructed him to hose out the dryers from top to bottom. Kelly Teel, however, testified that Grundmann did not inform him that he should clean out the tops of the dryers. The evidence at trial |sfurther indicated that the crew only hosed out the bottom of the dryers, and the grain dust in the top of the dryer caused the explosion. Based on the foregoing, we find that the evidence adduced at trial was sufficient to support the jury’s conclusion that Superior Scrap was partially liable for plaintiffs injuries.
Additionally, defendant alleges that the trial court erred by awarding excessive general damages to Mr. Castay and excessive loss of consortium damages to Mrs. Castay.
The trier of fact is accorded much discretion in fixing general damage awards. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), certiorari denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (La.1994). The discretion vested in the trier of fact is great, “even vast,” so that an appellate court should rarely disturb an award of general damages. Id. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Id.
Castay was injured when the grain dryer upon which he stood was engulfed in flames. While on fire, he had to jump from one grain dryer to another over an 80-foot gap between the two. Because of the force with which he landed on the other dryer, he suffered back injury.
Kelly Teel saw Castay moments after the explosion. He observed what he described as a ball of fire come out of the top of the dryer, crossing over from one dyer to another. He described Castay’s hair as looking like melted plastic. He recalled that Castay and Bourgeois were stranded at the top of the dryer for a long period of time after the accident.
Castay himself testified at trial about the extent of his injuries. His testimony revealed that he was admitted to the ICU and was hospitalized for ten days. He underwent four very painful debridement procedures. He was afraid to 19look at his own face for several days after the accident. He suffered back pain while he was in the hospital, but surgery could not be performed until his burns healed. He testified that his vision was poor after the accident and that he had a pain in his jaw due to grinding because his pain was so severe. He had to remain indoors for several months after the accident, and then attempted to return to work, but his back pain made work unbearable, even affecting his ability to walk. He endured *55 two back surgeries and was on constant pain medication. He was advised by physicians that if he attempted to resume employment similar to his employment at the time of the accident, that he would likely have to undergo several fusions, and there was a chance that he would then be unable to bend his back. Once he discovered that he would not be able to return to work as a pipe fitter or welder, his psychological state deteriorated. He testified that his temper flares easily, that he slips into depression readily and that he is disinterested in interaction with his wife. Though he has attempted to perform other types of employment, he has, so far, been unsuccessful due to constant and considerable pain.
The jury awarded Castay $750,000.00 in general damages. Although the award may be on the high side of that which we consider reasonable, we are unable to say it is abusively so, particularly considering the manner in which Castay was injured, the significance of his injuries, and their likely impact on his future work and personal life. Therefore, considering the foregoing testimony, the objective medical evidence, and the record as a whole, and mindful of the principles by which we must conduct our review, we cannot say that the trial court abused its discretion in its general damage award.
Defendants next generally argue that the trial court erred in awarding plaintiff $137,138.00 in past lost wages and $183,334.00 in future lost wages. We find no indication that these awards were made in error. To the contrary, we find that the record supports the trial court’s past and future lost wages awards. Dr. |inGorbitz testified that Castay cannot return to his pre-injury employment without risking very serious back injury. And it was a defense expert who testified to the figures at which the trial judge arrived. We, therefore, affirm the trial court’s past and future lost wages’ awards.
We now address defendants’ assertion that the trial court’s loss of consortium award of $75,000.00 to Mrs. Cas-tay was abusively high.[4] Loss of consortium awards generally include elements such as loss of services, love, companionship, affection, society, sexual relations, comfort and solace. Kistner v. King, 98-641 (La.App. 5 Cir. 12/16/98), 726 So.2d 68. Mrs. Castay testified at trial about how her husband’s accident has affected their lives. According to Mrs. Castay, while her husband was hospitalized for ten days immediately after the accident, she remained with him in his hospital room 24-hours a day. She testified that since he has been at home, and for the last six years since the accident, their house is centered around his pain. When he does not feel well, no one in their house feels well. If her husband fails to take his pain medication, the pain keeps him awake at night, which wakes up everyone in the house. Mr. Castay’s testimony supports that of his wife. He testified that, since the accident, he feels like “half of a man” and that his pain forced him to just sit around his house for several months, restricts his activities with his family and has altered his sexual relationship with his wife.
While plaintiff did not testify to great lengths about her loss of consortium, we find that the record, nonetheless, supports the trial judge’s $75,000.00 loss of consortium award. Clearly, with an injury of this magnitude, and with the constant pain *56 that Mr. Castay endures, his relationship with his wife is affected.
Defendants also assign as error the jury’s $84,000.00 award of future medical expenses. Defendants contend that there was no evidence to prove that Inplaintiff would more probably than not require future medical treatment, particularly surgery and medications and treatment from Dr. Jerry Wang.
Plaintiff argues, to support the jury’s award, that Dr. Carlos Gorbitz, plaintiffs treating orthopedist, testified that plaintiff will probably require a fusion in the future and will certainly require several months of physical therapy, anti-inflammatory medication and detoxification, to cure his addiction to pain medication.
To recover future medical benefits, the plaintiff must prove that these expenses will be necessary and inevitable. Ganucheau v. Winn Dixie LA, Inc., 99-432 (La.App. 5 Cir. 11/10/99), 746 So.2d 812, writ denied, 99-3641 (La.2/18/00), 754 So.2d 972. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable costs. Id.
Dr. Gorbitz testified that Castay should continue to participate in active rehabilitation, with a goal of getting him off painkillers. He did believe that future surgery, and specifically a fusion operation, was possible, if his symptoms persist. He did not, however, know the cost of such a surgery. When the need for future medical care has been demonstrated, but cost is not susceptible of determination, a court may make a reasonable award. Id. Here, Dr. Gorbitz testified that he did not know the exact cost of a fusion operation because many factors dictate the cost. We find that the evidence sufficiently supports the award and that the award was reasonable in amount. We, thus, affirm the $84,000.00 future medical expenses award.
In their fourth assignment of error, defendants argue that the trial court permitted the plaintiff to recover twice for his injuries due to initial payment of his medical expenses by plaintiffs employer and its worker’s compensation carrier. The record, however, reflects no such double recovery, and instead reflects that | ^plaintiff repaid the worker’s compensation carrier’s lien in full several years prior to trial. We, therefore, find no merit in defendants’ argument to that effect.
Finally, the defendants argue that the trial court erred in not finding the plaintiff partially at fault. We reject that argument. Castay’s testimony revealed that he did not know that the tops of the grain dryers contained grain dust and was unable to view or smell the grain. Castay was simply hired to represent Quality Fab at the jobsite and to disconnect the dryers from the elevator, and when he was injured, he was performing those duties. Accordingly, we find that the jury did not commit manifest error by not finding plaintiff comparatively at fault.
Based on the foregoing, we affirm the trial court’s judgment in part and reverse in part. We affirm the trial court’s general damages award, past and future lost earnings awards, award of future medical expenses and loss of consortium award to Castay’s wife. We also affirm the trial court’s finding that plaintiff was entirely free from fault in the accident. We reverse that part of the judgment increasing defendants’ percentage of liability from 26.7 percent to 50 percent, and, instead find that defendants, Superior Scrap, and its insurer, Essex, are liable for 26.7 percent of the total judgment.

*57
AMENDED AND, AS AMENDED, AFFIRMED

. Cavalier v. Cain’s Hydrostatic Testing, Inc., 94-1496 (La.6/30/95), 657 So.2d 975.

. Act 3, 1996 Extraordinary Legislative Session, which amended La. Civ.Code art. 2323.

. The jury awarded Mrs. Castay $250,000.00, but the trial judge, in a JNOV, decreased the amount to $75,000.00.