# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 17, 2007**

Charles R. Fulbruge III
Clerk

No. 06-30725

TERRY LEJEUNE

Plaintiff-Appellee

v.

TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:03-CV-89

Before JOLLY, STEWART[*], and CLEMENT, Circuit Judges.

PER CURIAM:[**]

Transocean Offshore Deepwater Drilling, Inc. ("TODDI") timely appealed a judgment for damages and maintenance and cure. We order a remittitur in part, reverse in part, and affirm in part.

## I. FACTS AND PROCEDURAL HISTORY

While Terry Lejeune was working as a crew member on a drilling vessel owned by TODDI on January 16, 2002, a valve weighing between 80 and 100

---

[*] Judge Stewart concurs in the judgment only.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

pounds fell from a height of four feet onto the top portion of Terry Lejeune's left foot. The valve crushed his first metatarsal bone and peroneal nerve. Lejeune received treatment and, while his fracture was healing well after three weeks, he reported excessive pain and was diagnosed with a soft-tissue injury. After continuing to experience excruciating pain, Lejeune sought treatment from a neurologist who believed Lejeune was suffering from Reflex Sympathetic Dystrophy ("RSD"), also called Complex Regional Pain Syndrome ("CRPS"). This condition causes a patient to experience pain disproportionate to the precipitating injury. Lejeune was treated with a series of nerve blocks but his pain continued.

In February 2003, Lejeune's neurologist concluded that he had reached maximum medical improvement ("MMI") and notified TODDI. Lejeune's physical therapy was terminated and he was instructed to exercise at home. During the next three months, Lejeune's condition deteriorated, and the neurologist conceded that he had prematurely discharged Lejeune. He prescribed Neurontin, a nerve pain medication, which Lejeune took in such high doses that he was unable to function.

In May 2004, Lejeune sought treatment from an anesthesiologist-interventional pain physician who ordered the installation of a sciatic nerve catheter for pain relief. After the installation in February 2005 was determined to be successful, the anesthesiologist recommended Lejeune get a peripheral nerve stimulator which is a device that electrically confuses a nerve in order to suppress pain impulses. After that procedure in May 2005, Lejeune experienced a significant decrease in pain. The anesthesiologist testified that he was sure Lejeune would not need crutches for long, and that many patients improve so much that the stimulator can be removed in a few years.

Lejeune sued TODDI under the Jones Act and general maritime law. TODDI's liability was stipulated, and the case was tried on the issue of damages.

The district court awarded damages of approximately $1,800,000.00, consisting of $750,000.00 in general damages for pain and suffering, $899,894.00 in lost wages, fringe benefits and meals, $190,012.31 in medical costs, and $6600.00 in retraining costs. The district court further awarded maintenance and cure for all "physical and psychological conditions" caused by the accident.

The district court found that Lejeune had not reached maximum medical cure and listed its reasons for that finding. After making that finding, the district court commented:

> The Court has been watching Mr. Lejeune very closely during the course of this trial, and even when I think he was not aware that I was paying attention to him when he was standing out on the front steps because my office overlooks that area, this Court has seen Mr. Lejeune to be in obvious distress and pain.

TODDI timely appealed.

## II. DISCUSSION

A.    Extrajudicial observations

TODDI argues that the district court's extrajudicial observations prejudiced it because it had no opportunity to test the validity and reliability of the observations. While this issue has not been decided in this circuit before, the Tenth Circuit reviewed extrajudicial observations by a judge "by the general standard regarding the erroneous admission of evidence." Lillie v. United States, 953 F.2d 1188, 1192 (10th Cir. 1992). We take the same approach to this question as the Tenth Circuit. This court reviews evidentiary rulings for abuse of discretion. Guillory v. Domtar Indus. Inc., 95 F.3d 1320, 1329 (5th Cir. 1996). If evidence was admitted in error, "[w]e must address whether the error was harmless." Polythane Sys., Inc. v. Marina Ventures Int'l., Ltd., 993 F.2d 1201, 1208 (5th Cir. 1993). "We will not disturb an evidentiary ruling, albeit an erroneous one, unless it affects a substantial right of the complaining party." Id.

The district court's extrajudicial observations were in error. It was improper for the court to make observations, essentially admitting evidence, without giving the parties the opportunity to challenge that evidence. The issue to be decided is whether that error was harmless.

The extrajudicial observation that the court made went solely to Lejeune's credibility about whether he continued to suffer from the injury. Before commenting on its observation, however, the court had already determined that the only witness to question Lejeune's credibility on that issue was unpersuasive. The court found that the lone doctor's opinion that Lejeune could "return to offshore work today [was] beyond the pale." This finding was based on the court's analysis of the testimony of other witnesses and the voluminous record of Lejeune's treatments. It is uncertain whether the court relied on its observation of Lejeune at all or whether it simply made the remark as an aside to further justify what it had already determined from its analysis of the witnesses. Even if the court had relied on its observations of Lejeune out of court, in light of the record and the analysis conducted by the court, its error in making the extrajudicial observation did not affect a substantial right of TODDI's and was harmless.

B.    General damages

TODDI argues that the $750,000.00 in general damages awarded is excessive and should be limited to $332,500.00. "A district court's damages award is a finding of fact, which this court reviews for excessiveness using the clear error standard." Lebron v. United States, 279 F.3d 321, 325 (5th Cir. 2002). "[W]hen this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir. 1995). "[W]e apply the loosely defined 'maximum recovery rule' when deciding whether a remittitur is in order. This judge-made rule essentially provides that we will decline to reduce damages where the amount awarded is

not disproportionate to at least one factually similar case from the relevant jurisdiction." Douglass v. Delta Air Lines, Inc., 897 F.2d 1336, 1344 (5th Cir. 1990) (emphasis in original). "[T]he maximum recovery rule does not become operative unless the award exceeds 133% of the highest previous recovery in the state." Id. at 1344 n.14. "Because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited if unique facts are present that are not reflected within the controlling caselaw." Lebron, 279 F.3d at 326 (internal quotation omitted).

The district court's award of $750,000.00 in general damages ($400,000.00 for past damages, $350,000.00 in future damages) is higher than other similar cases in Louisiana. The driver of a car hit by a cement truck who suffered, as a result of the accident, from RSD, thoracic outlet syndrome, thrombosis, depression and post-traumatic stress disorder was awarded $300,000.00 in past and future general damages. Roig v. Travelers Ins. Co., 694 So. 2d 362, 364, 381 (La. Ct. App. 1996). A plaintiff whose hip was struck by a slot machine door who suffered from RSD, underwent a ganglion block two and a half years after the injury to relieve her pain, and whose pain was expected to return, although she suffered only slight pain in her hand and wrist at the time of trial, was awarded $60,000.00. LeMasters v. Boyd Gaming Corp., 898 So. 2d 497, 500, 503–05 (La. Ct. App. 2005). One plaintiff suffered third degree burns on his feet, hands, back and abdomen which forced him to undergo numerous surgical procedures for debridement of the wounds, skin grafts, and the amputation of one big toe. Casanova v. Ballard, 533 So. 2d 1005, 1008 (La. Ct. App. 1988). He was also being treated for decubitus ulcers at the time of trial and was awarded $200,000.00 for general damages. Id.

In Louisiana, $750,000.00 in general damages have been awarded to plaintiffs such as one who was:

> severely burned over 25% of his body. Three quarters of the affected area received third degree burns while the remainder were deep second degree burns. Plaintiff's right arm was covered in third degree burns from his armpit to his wrist. The right arm was covered with skin grafts harvested from plaintiff's thighs. The skin harvesting process itself produced injuries not unlike second degree burns thereby further intensifying plaintiff's suffering. Plaintiff suffered through two agonizing debridement treatments per day for two to three weeks . . . . Plaintiff has suffered permanent scarring . . . . [P]laintiff testified concerning the anguish he felt when strangers stared at his scars or when children called him a monster. Plaintiff suffers from recurring flashbacks, nightmares, and an inability to sleep.

Thomas v. State Dep't of Trans. and Dev., 662 So. 2d 788, 795–96 (La. Ct. App. 1995). Another plaintiff was awarded $750,000.00 in general damages when he suffered a back injury after jumping from a grain dryer where he was engulfed in flames. Castay v. ADM Growmark River Sys., Inc., 785 So. 2d 47, 54–55 (La. Ct. App. 2001). He was hospitalized for ten days, underwent four debridement procedures, two back surgeries, deterioration of his psychological state, and continued to suffer "constant and considerable" pain at the time of trial. Id.

The most factually similar case to Lejeune's is LeBleu v. Dynamic Industrial Constructors, Inc., where a trailer tongue fell onto LeBleu's leg and fractured his ankle while he was attempting to hitch a trailer to a truck. 526 So. 2d 1184, 1186 (La. Ct. App. 1988).

> After an operation complications arose and the ankle developed sympathetic dystrophy resulting in swelling, pain and stiffness. As the plaintiff could not use the ankle, atrophy resulted and eventually the plaintiff's knee developed a painful condition called chondromalacia. At the time of trial, two years after the accident, the plaintiff still had pain and stiffness in his ankle and knee, a condition which was aggravated by the fact that the plaintiff had to place most of his weight on his only remaining leg. Mr. LeBleu has become totally disabled and can walk only with extreme effort and for short periods of time. The pleasures of everyday life such as gardening, hunting and even driving himself around are no longer available to the plaintiff.

6

. . . [T]he plaintiff was also suffering from traumatic neurosis. Once an active person with no history of emotional problems, the plaintiff was now quiet, withdrawn, despondent, and occasionally suicidal. He has also become greatly frustrated, restless and nervous and was experiencing great difficulty in adjusting to his lack of mobility.

Id. at 1189. While the court found that LeBleu's award of $300,000.00 "might appear to be in the upper permissible range, due to the extenuating circumstances of the plaintiff's previously lost leg and the resulting total disability," the court affirmed the award. Id.

The general damages awarded to Lejeune are clearly excessive. While Lejeune suffered greatly, $750,000.00 in general damages is far higher than the awards in cases in Louisiana where plaintiffs have suffered similar injuries and similar long-term pain. His injuries do not rise to the level of those suffered in Thomas and Castay where Louisiana courts have awarded that amount in the past. Lejeune's suffering is similar to that in LeBleu. Lejeune distinguishes his case from LeBleu by pointing out the substantial differences in medical costs and that he is thirty years younger than LeBleu. Such differences are not convincing. The vast majority of medical expenses in Lejeune's treatment are for the purpose of providing physical therapy and reducing his pain and suffering with the installations of the sciatic nerve catheter and peripheral nerve stimulator, and battery change for the stimulator. A much higher general damages award cannot be justified by pointing to much higher compensatory damages designed to reduce a plaintiff's pain and suffering. LeBleu's and Lejeune's cases are comparable in the amount of pain and suffering each experienced. Both experienced similar injuries and both continued to suffer from pain through the time of trial. As to the differences in Lejeune's and LeBleu's ages, because of the medical treatment Lejeune has received and will continue to receive, one witness opined that he may eventually do without crutches or the nerve stimulator. LeBleu had no such improvement and suffered additionally

because he was already missing one leg before his injury which caused him to place his weight on the injured leg.

Thus, as Lejeune's award of $750,000.00 is more than 133% of the highest recovery in a factually similar case in Louisiana, LeBleu, the maximum recovery rule applies. The district court's general damages award was clear error and is reversed. This court orders a remittitur of the general damages award to $400,000.00 which is 133% of the $300,000.00 award in LeBleu.

## C. Lost future wages

TODDI argues that the district court erred in its award of $744,108.00 for lost future wages for the foreseeable future because Lejeune would have no reasonably foreseeable need for medical treatment beyond five years. This court reviews findings of fact, including damage awards, under the clearly erroneous standard. Nichols v. Petroleum Helicopters, Inc., 17 F.3d 119, 121 (5th Cir. 1994). "Damage awards will not be disturbed unless we are convinced that an error has been committed." Id. (internal quotation omitted).

The district court found that Lejeune was totally and permanently disabled for the foreseeable future and would, at best, be able to return to minimum wage employment part-time after five years. TODDI is incorrect to suggest that the district court's decision regarding future medical treatment is at odds with its decision that Lejeune is disabled for the foreseeable future. The two issues are separate. A patient may cease medical treatment but still have a permanent disability. There is substantial evidence in the record from a vocational rehabilitation counselor to support the district court's finding. Therefore, this court cannot conclude that the district court's finding that Lejeune was disabled for the foreseeable future was clear error.

The district court's finding that Lejeune would only return to part-time work is a closer issue. From the trial transcript, the court's basis for this finding was "because [Lejeune] has difficulty sitting for long periods of time." The court

consequently asked each economic expert to calculate lost wages based on Lejeune working part-time. It is unclear what basis the court had for its finding that Lejeune would only work part-time. Neither vocational rehabilitation expert concluded that Lejeune would only be able to work part-time. In fact, Lejeune's own expert testified that Lejeune would only be capable of "sedentary work where you sit behind a desk and shuffle paperwork or answer the telephone throughout the day." The expert only testified to part-time work when asked on redirect whether someone working part-time received benefits. The court appears to have determined that Lejeune could not sit for long periods of time based on Lejeune's own testimony that "I can't stand too long, the pain increases, or I sit too long the pain increases. I just got to keep rotating, sitting, standing, laying down." However, no vocational rehabilitation expert testified as to how this would affect Lejeune's ability to work full-time or part-time. Thus, there was insufficient evidence to support the district court's conclusion that Lejeune would only return to part-time work. The decision was clearly erroneous and the award for future lost wages is reversed and remanded for recalculation based on Lejeune's return to full-time work.

D.  Future cure obligation

TODDI argues that the future cure obligation, except for those items listed in the damages judgment for the five-year period after the implantation of the nerve stimulator, is speculative and the court erred in awarding the obligation. A district court's findings of fact in a maintenance and cure decision are reviewed for clear error and its conclusions of law are reviewed de novo. Silmon v. Can Do II, Inc., 89 F.3d 240, 242 (5th Cir. 1996).

> The seaman's recovery must . . . be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained.

Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 531–32 (1938). "Since the amount and extent of maintenance and cure depends upon future developments, maintenance and cure for the future are ordinarily not awarded in a lump sum." Dupre v. Otis Eng'g Corp., 641 F.2d 229, 234 n.6 (5th Cir. 1981) (internal quotation omitted). A shipowner's obligation to provide maintenance and cure to a permanently injured seaman extends until the incapacity is diagnosed as permanent. Vella v. Ford Motor Co., 421 U.S. 1, 4–5 (1975).

The district court required the defendant to provide for Lejeune's physical therapy and psychological treatment beyond the five years contemplated in the calculation of medical costs, until Lejeune can make no further improvement or he no longer requires treatment to prevent his condition from deteriorating. This court has acknowledged that maintenance and cure amounts may vary because they depend upon future developments. So, it is not error for the district court to obligate TODDI to pay an uncertain amount. Nor is it error for the district court to obligate TODDI for an uncertain period of time, so long as the end point is ascertainable.

That Lejeune had not yet reached maximum medical improvement is well-established in the record. His anesthesiologist testified that Lejeune may no longer need crutches in the future and that some patients cease needing the stimulator. Since Lejeune's incapacity was still not diagnosed as permanent at the time of trial, the court's award of the continued cure obligation was proper. While it is not known when Lejeune will reach maximum medical improvement, it is a point that can be definitely ascertained. This court does not find that the district court's decision is clear error. The district court's judgment regarding TODDI's future cure obligation is affirmed.

Because TODDI challenged the future cure obligation for an indefinite period beyond May 2010, this court reviewed the district court's award of $124,945.00 for future damages for medical costs. A portion of the future

10

damages award, $26,466.00, was for doctor visits until May 2010. This amount was calculated by estimating Lejeune would visit the doctor four times a year at a cost of $125.00 to $150.00 per visit. At $500.00 to $600.00 in doctor visits per year, the present value of future doctor visits for four years should be closer to an amount of $2400.00, not $26,466.00. The portion of the future damages award for doctor visits is clearly in error and appears to account for doctor visits for an unknown period long after May 2010. Beyond May 2010, such costs are provided for in the future cure obligation. The portion of the future damages award designated for doctor visits is reversed and remanded for recalculation to account for doctor visits until May 2010.

## III. CONCLUSION

The district court erred in making extrajudicial observations of the plaintiff, but the error was harmless. This court orders a REMITTITUR of the general damages award to $400,000.00. The award for future lost wages is REVERSED and REMANDED for recalculation consistent with this opinion. The future cure obligation is AFFIRMED. The future damages award for doctor visits is REVERSED and REMANDED for recalculation of the cost of visits until May 2010.