WICKER, J.
This is a tort case in which Appellant, Francesca Lapuyade, seeks review of the trial court's June 1, 2018 judgment granting Appellee's, JFC International, Inc., (JFC), motion for summary judgment and dismissing Appellant's claims against JFC. For the following reasons, we affirm the trial court's judgment.
FACTS & PROCEDURAL HISTORY
The Appellant and Appellee have previously sought this Court's review regarding a different set of procedural issues stemming from the same facts, portions of which have been reiterated below.[1]
On October 10, 2012, Appellant filed suit against Acme Oyster House ("Acme") alleging she contracted Salmonella poisoning after eating a lettuce wedge with blue cheese dressing and artichoke soup at its establishment located on Veterans Blvd. in Metairie, Louisiana on May 6, 2012. She alleged that she became ill the day after eating at Acme and was admitted to East Jefferson General Hospital on May 9, 2012, where she remained for eight days before being discharged on May 17, 2012. Appellant asserted Acme was negligent in failing to properly store, handle and prepare the food it served to its customers. Acme answered *510 the lawsuit on December 6, 2012, denying all allegations.[2]
On April 2, 2014, Appellant amended her petition to add Little Tokyo Restaurant, Inc. ("Little Tokyo"), Moon Marine USA Corp. ("Moon Marine"), and their insurers as defendants. In the amended petition, Appellant alleged that she had dined at Little Tokyo restaurant located on N. Carrollton Ave. in New Orleans on April 29, 2012. She alleged that although her treating doctor originally believed the source of her food poisoning was Acme, which he noted in her medical records, her treating doctor thereafter indicated for the first time in October 2013, that there had been a Salmonella outbreak at the time Appellant became sick that had been traced to a product called "Tuna Scrape."[3] Appellant asserted that the source of this Tuna Scrape was Moon Marine, which had distributed its product to Little Tokyo.
Appellant again amended her petition on June 26, 2015, adding JFC International, Inc. ("JFC"), appellee herein, as a defendant. Appellant alleged that JFC is an entity which purchased Tuna Scrape from Moon Marine and sold and distributed the product to various restaurants, including Little Tokyo. Appellant further alleged that JFC was advised by Moon Marine in April 2012 to contact the accounts to which JFC distributed Tuna Scrape on behalf of Moon Marine, and inform them that the Tuna Scrape had been recalled because an FDA investigation revealed the tuna was potentially contaminated with Salmonella. Appellant asserted that JFC failed to notify Little Tokyo of the recall, which occurred prior to her dining at Little Tokyo and becoming ill.
On February 9, 2015, Moon Marine filed an exception of prescription asserting that Appellant's petition against it was prescribed on its face, as it was not filed within one year from the date of loss. Thereafter, JFC and Little Tokyo filed their own exceptions of prescription, adopting Moon Marine's position.
After a hearing on Moon Marine, JFC, and Little Tokyo's exceptions of prescription, the trial court sustained the exceptions and dismissed Appellant's claims against the defendants with prejudice. Appellant appealed and on April 13, 2016, this Court reversed the trial court's decision and remanded the case for further proceedings.[4]
On March 6, 2018, JFC filed a motion for summary judgment seeking to have Appellant's claims against it dismissed with prejudice. In its motion, JFC alleged that on April 4, 2012, it delivered Moon Marine's Tuna Scrape to Little Tokyo, and on April 13, 2012, Moon Marine advised JFC of the product's recall for suspected Salmonella contamination. JFC further alleged that on April 16, 2012, it contacted Little Tokyo to "quarantine the recalled Tuna Scrape and make arrangements for it to be collected and returned to Moon Marine."[5] On this same day, JFC alleged *511 that Little Tokyo informed JFC that it no longer had any of the recalled Tuna Scrape in stock. JFC's motion then reiterated Appellant's claim that she dined at Little Tokyo Restaurant in New Orleans on April 29, 2012, became ill on May 7, 2012, and was hospitalized and treated for Salmonella poisoning from May 9 to 17, 2012.
In providing the aforementioned timeline, JFC argued that it timely discharged its legal obligations with respect to the contaminated Tuna Scrape on April 16, 2012, when it contacted Little Tokyo, and that Appellant had no claim against JFC for her Salmonella food poisoning. In a subsequent memorandum in support of JFC's motion for summary judgment, which was filed on the same day as the motion, JFC argued that it discharged any duty it may have owed Appellant by "declaring the defect in the tuna" to Little Tokyo once it was advised of the defect by Moon Marine and cannot be held responsible for Little Tokyo's negligence.
On March 13, 2018, the trial court set a hearing for May 10, 2018,[6] to show cause why JFC's motion for summary judgment should not be granted. Thereafter, the parties filed other motions not relevant to this opinion which resulted in the matter being continued to May 23, 2018.[7] On May 7, 2018, Appellant filed a memorandum in opposition to JFC's motion for summary judgment in which she argued that although JFC advised Little Tokyo by telephone of a recall, JFC failed to inform Little Tokyo of the reason for the recall and failed to provide the specific notice recommended by Moon Marine.
At the May 23, 2018 hearing, the trial court heard JFC's motion for summary judgment and several other unrelated motions.[8] In a judgment rendered June 1, 2018, the trial court granted JFC's motion for summary judgment and dismissed Appellant's claims against JFC with prejudice.
DISCUSSION
This tort case involves the distribution and selling of Tuna Scrape which Appellant alleges caused her to become very ill and led to her hospitalization for eight days. Appellant appeals the Twenty-Fourth Judicial District Court's judgment granting Appellee's (JFC) motion for summary judgment and dismissing Appellant's claims against JFC with prejudice. Appellant's sole assignment on appeal is that the trial court erred in granting JFC's motion for summary judgment in that there exists a material issue of fact regarding whether JFC breached its duty to Appellant by failing to advise Little Tokyo of the specific defect in the tuna or the potential dangers associated with the product and failing to provide the specific notice recommended by the manufacturer, Moon Marine. For the following reasons, we affirm the trial court's judgment and find that the trial court did not err in granting JFC's motion for summary judgment.
Appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Crosby v. Wal-Mart Stores, Inc. , 10-1015 (La. App. 5 Cir. 6/14/11), 67 So.3d 695 *512 citing Landreneau v. Copeland's Cheese Cake Bistro, L.L.C. , 08-647 (La. App. 5 Cir. 1/13/09), 7 So.3d 703. Therefore, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether mover is entitled to judgment as a matter of law. Chambers-Johnson v. Applebee's Rest. , 12-98 (La. App. 5 Cir. 9/11/12), 101 So.3d 473, 476, citing Matthews v. Banner , 08-339 (La. App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). A motion for summary judgment should be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). The initial burden of proof lies with the mover to show that no genuine issue of material fact exists. However, when a motion for summary judgment has been filed and supported by evidence, the adverse party may no longer rely on the mere allegations or denials of his pleadings, but his response, through affidavits or otherwise, must set forth evidence demonstrating that there is a genuine issue for trial. La. C.C.P. art. 967(B) ; Fuggins v. Burger King , 33,473 (La. App. 2 Cir. 5/10/00), 760 So.2d 605.
On May 23, 2018, the trial court held oral arguments on JFC's motion for summary judgment and after hearing arguments from both Appellant and Appellee found:
[...] no genuine issues of material fact exist concerning whether or not JFC International Inc. breached any duty owed to the Plaintiff, and that JFC International Inc. timely notified Little Tokyo Restaurant Inc. of the recall at issue in this matter.
In appealing the trial court's ruling, Appellant argues that there is a material issue of fact in that the undisputed material facts demonstrate that JFC breached its duty to her by failing to advise Little Tokyo of the specific defect in the tuna or the potential dangers associated with the product and failing to provide the specific written notice recommended by the manufacturer, Moon Marine.
Appellant argues that JFC's failure to provide Little Tokyo with "specific documentation" per the recommendation of Moon Marine demonstrates its breach of its duty to Appellant to specifically inform Little Tokyo that the recall was necessitated because the tuna was contaminated with Salmonella.
In support of her argument, Appellant points to language in the recall notice issued by Moon Marine to JFC on April 12, 2012, which identified the tuna and informed JFC that it was potentially contaminated with Salmonella. The notice also identified the effects of Salmonella as causing "serious and sometimes fatal infections in young children, frail and elderly people, and others with weakened immune systems," and indicated that Moon Marine shipped 100 cases of the possibly affected tuna to JFC. The notice and key focus of Appellant's argument stated:
If you have distributed any of this ground tuna, please immediately contact your accounts, (we suggest that you utilize the same recall letter language and response card, as we are providing), advise *513 them of this recall situation, and have them return their outstanding recalled stocks to you.
Attached to the notice was a "Recall Return Response Form," which requested the individual completing the form to acknowledge that he or she understood the recall instruction provided on April 12, 2012, had checked stock and quarantined infested packages, and "have identified and notified my customers that were shipped or may have been shipped this product on the following date [space provided], by e-mail, FAX, visit."
The deposition testimony attached to JFC's motion for summary judgment reflects that JFC telephoned Little Tokyo to notify it of the recall. Appellant argues that JFC's phone call to Little Tokyo was insufficient in that "nowhere did Moon Marine suggest to JFC that a telephone call, much less a telephone call with no detail, would be sufficient notification." We find this claim to be without merit as we do not consider the three modes of communication provided by Moon Marine (i.e. e-mail, fax, or visit) to be the only means by which a distributer could effectively and properly notify a possibly affected party of the contaminated tuna. Nowhere in Moon Marine's notice does it mandate a specific form of notification be given to JFC's clients; instead, Moon Marine suggests that certain language be used when informing clients of the potential Salmonella infested tuna. Given the severe nature of the side-effects of Salmonella, it stands to reason that a distributor would use the quickest mode of communication available to inform its clients of the defective tuna.[9]
The intention of the recall notice is to make possibly affected parties aware of the existence of a defect in a product and prevent it from affecting consumers. Here, JFC informed Little Tokyo of the existence of a possible defect in the food delivered by JFC. The owner of Little Tokyo testified that, although JFC failed to expressly identify the exact defect in the Tuna Scrape, he recognized the serious nature of the recall and began the process of identifying the defective tuna. He thereafter relayed to JFC that he did not have any of the defective product.
During the July 14, 2017 deposition of Mr. Kawahara, the owner of Little Tokyo, he testified that Mr. Takeda, a sales representative of JFC, called him by phone. Mr. Kawahara stated:
I got phone call from a salesman JFC and I check and I called restaurants if they have that particular box. I remember that, because it was like a very serious thing, so I call everybody. They don't have any box. I check with Asian Gourmet freezer, we don't have any more, so that's it. [sic]
After being questioned about the existence of the contaminated tuna at Little Tokyo despite Mr. Kawahara's claim to Mr. Takeda that there was none, Mr. Kawahara stated:
No. JFC, they do use so many companies to get all the tuna, grounded tuna, and we check because certain boxes had that name or whatever it is. And we had some other box that was the other company's name. It's not only one company's.
* * *
*514 I check, we do not have, so we are not sure we use the box. I'm not sure - I'm not sure we had that box. I'm not sure they send us that box, because we have so many companies' box. [sic]
Mr. Kawahara testified that it took him about an hour from Mr. Takeda's call to check the warehouse, call his other restaurant locations and have his employees check for the tuna and return Mr. Takeda's call.
Specifically, regarding the phone conversation between Mr. Takeda and Mr. Kawahara, he stated:
Q: Right. What do you remember about the phone conversation with Mr. Takeda?
A: He said check this companies and he say this a recall and that's it.
Q: Did he say why?
A: It's a recall.
Q: Did he tell you why it was recalled?
A: No. He said recall.
Q: That's all he said?
A: Yes.
Q: Did you ask him why it was recalled?
A: To me recall is recall. I don't know what's --
This exchange indicates that while Mr. Takeda did not specifically inform Mr. Kawahara of the exact reason for the recall, Mr. Kawahara was well aware of its importance. After receiving the phone call from Mr. Takeda, Mr. Kawahara not only checked the warehouse he uses to store the Tuna Scrape, but contacted all of his stores and was informed by his employees that there was no Tuna Scrape at which point he contacted JFC's representative, Mr. Takeda, and informed him that there was no possibly infected Tuna Scrape at his store.
Since JFC orally received notice from Little Tokyo that there was no Tuna Scrape at any of its locations, it stands to reason that JFC would not send Little Tokyo a letter requesting the return of the recalled Tuna Scrape, which Little Tokyo stated it did not possess. Therefore, the trial court did not err in granting summary judgment in favor of JFC.
Inconsistent Results
Appellant further argues that the dismissal of JFC on summary judgment engenders a seriously inconsistent result in that the jury is free to consider Moon Marine's fault, but not allowed to consider the fault of JFC.
A jury may consider Moon Marine's liability in the present case because they settled with Appellant. See Castay v. ADM Growmark River Sys. , 00-1489 (La. App. 5 Cir. 3/14/01), 785 So.2d 47 ; Abadie v. Metro. Life Ins. Co. , 00-344 (La. App. 5 Cir. 3/28/01), 784 So.2d 46. They were, unlike JFC, not dismissed by way of summary judgment. However, as a matter of law the liability of a party in whose favor summary judgment is granted cannot be considered at trial. La. C.C.P. art. 966(G) states:
When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or non-party is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or non-party shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or non-party. During the course of the trial, no party or person shall refer directly or indirectly to any such fault, nor shall that party or non-party's fault be submitted to the jury or included on the jury verdict form.
We find that the release of JFC's liability as a result of summary judgment does not produce inconsistent results in that *515 JFC satisfied the duty it owed to Appellant when it notified Little Tokyo of the recalled Tuna Scrape and was informed by Little Tokyo that none existed at any of its locations. The granted summary judgment is a finding that JFC is free from fault.
Conclusion
The trial court did not err in granting summary judgment to Appellee, JFC International, Inc., in that it notified Little Tokyo of a defective product and was informed that the product was not at any of Little Tokyo's locations. Accordingly, we affirm the trial court's judgment.
AFFIRMED

See Lapuyade v. Rawbar, Inc. , 15-705 (La. App. 5 Cir. 4/13/16), 190 So.3d 1214. (Appellant in this matter, Francesca Lapuyade, sought this Court's review regarding prescription and evidentiary issues.)

Acme subsequently filed a motion for summary judgment that was granted on July 21, 2015, resulting in appellant's claims against Acme being dismissed with prejudice. Appellant initially appealed this judgment; however, in her appellate brief, Appellant indicated that she no longer wished to appeal the granting of summary judgment in favor of Acme and did not raise any assignments of error relating to the judgment.

The official name of the tuna is Nakaochi Tuna Scrape AA or AAA ("Tuna Scrape").

See Lapuyade, supra n.1.

In its statement of uncontested material facts, JFC specifically states, "In response to the Moon Marine notice, and using his cell phone, Mr. Takeda [from JFC] telephoned Little Tokyo's owner, Mr. Yusuke Kawahara...[and] advised Little Tokyo's Mr. Kawahara about the recalled Tuna Scrape."

The record does not reflect what occurred at the May 10, 2018 hearing.

The court set a hearing for May 23, 2018, to show cause as to why a reasonable fee for the deposition of Dr. Cousins should not be set.

The May 23, 2018 hearing consisted of Appellant's and Little Tokyo's motion for partial summary judgment, Appellant's motion to set reasonable fee, Little Tokyo's motion to exclude or limit the testimony of William Olge, and JFC's motion for summary judgment.

Appellant submitted several notices mailed by JFC to other parties identifying the tuna being recalled, informing them of the Salmonella contamination and side-effects, and requesting that the items be returned to JFC, as evidencing their knowledge of what was required to satisfy its duty. The record does not reflect that JFC mailed notice of the recall to Little Tokyo. However, we find that JFC was not mandated to use only one form of communication to inform consumers of the potentially contaminated tuna.